**STATE**

v.

**Craig C. PRICE.**

**No. 94-736-Appeal.**

Supreme Court of Rhode Island.

March 26, 1996.

Aaron Weisman, Asst. Atty. General, Michael Stone, Joseph P. Youngs, III, Special Asst. Attys. Gen., for Plaintiff.

Robert B. Mann, Providence, for Defendant.

## OPINION

LEDERBERG, Justice.

The issue before us is whether criminal contempt can be punished by incarceration for a period longer than one year. The State of Rhode Island (state) has appealed to the Supreme Court the finding by a Family Court justice that G.L.1956 § 11–1–1—the statute that sets forth the punishment for common-law offenses not covered by statute—applies to criminal contempt and consequently establishes a maximum penalty for that offense. For the reasons related below, we sustain the state's appeal and reverse the judgment of the Family Court. A summary of the pertinent facts and travel of this case follows.

### Facts and Procedural History

On September 21, 1989, Craig C. Price (defendant), then aged fifteen, appeared be-

fore the Family Court, admitted sufficient facts to be adjudicated delinquent on four charges of murder, and was committed to the Rhode Island Training School until the age of twenty-one. On the same date, the trial justice ordered defendant to undergo psychological or psychiatric evaluation as part of a court-ordered treatment plan.

On August 4, 1994, the state filed a felony complaint in the Family Court, charging defendant with criminal contempt on the grounds that he had, on various dates between November 16, 1989, and July 6, 1994, repeatedly refused to participate in the court-ordered evaluation and treatment program. On October 31, 1994, defendant filed a motion to dismiss or, alternatively, to compel amendment of the felony complaint against him, arguing that contempt constitutes a misdemeanor offense, not a felony.

At a hearing on November 14, 1994, the trial justice denied defendant's motion to dismiss and found that criminal contempt was a misdemeanor at common law. The trial justice ruled that § 11–1–1 provides that offenses that were misdemeanors at common law "and for which no punishment is prescribed by the general laws" may not be punished by a prison "term * * * exceeding one year." Therefore, the trial judge ruled that criminal contempt may not be punished by a sentence in excess of one year. On November 16, 1994, the state filed a timely notice of appeal pursuant to G.L.1956 § 9–24–32.

### Contempt of Court

■ On appeal, the state argued that the trial justice erred in applying § 11–1–1 to criminal contempt because the statute was never intended to apply to the inherent power of the courts to punish contempt of their authority. We agree.

"Contempt of court" has been defined as "any act in willful contravention of [the court's] authority or dignity, or tending to impede or frustrate the administration of

justice." A Law Dictionary 257 (Henry C. Black 2d ed. 1910). "[C]riminal contempts are acts done in disrespect of the court or its process or which obstruct the administration of justice or tend to bring the court into disrespect," in consequence of which "a fine or imprisonment is imposed upon the contemnor for the purpose of punishment." *Id.* at 257–58. "A sentence for a definite term for criminal contempt is * * * purely punishment to vindicate the court's authority and dignity." 17 Am.Jur.2d *Contempt* § 232 (1990) (citing *Yates v. United States,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957)). "Courts of justice have an inherent power to punish all persons for contempt of their rules and orders, for disobedience of their process, and for disturbing them in their proceedings." 1 Bouvier's Law Dictionary 420 (1897).

### Contempt Powers at Common Law

■ It is well settled that Rhode Island and the other original colonies adhered to English common law [1] after gaining their independence, *Greater Providence Chamber of Commerce v. State,* 657 A.2d 1038, 1042 (R.I. 1995), and that this state "recognizes all common law offenses that have not been specifically abrogated or superseded by statute." *In re Marlene B.,* 540 A.2d 1028, 1029 (R.I. 1988).

"Under the common law of England courts had inherent power to punish for contempt." Rollin M. Perkins, *Criminal Law* 531 (2nd ed. 1969) (citing *Douglas v. Adel,* 269 N.Y. 144, 146, 199 N.E. 35, 36 (1935)). Moreover, contempts against the King's Courts, which included the Court of King's Bench, Chancery, Common Pleas or Exchequer, were regarded as serious offenses "highly punishable by Fine and Imprisonment." William Hawkins, *A Treatise of the Pleas of the Crown,* ch. XXI, *"Of Contempts against the King's Courts"* at 57–58 (1739). The exercise of contempt powers by English courts and the

---

1. The "common law" has been defined as "nothing else but statutes worn out by time. All our law began by consent of the legislature, and whether it is now law by usage or writing is the same thing. (2 Wils. 348)." 1 *Sharswood's Blackstone's Commentaries,* at 73 n. 14 (1860).

The common law, or *leges non scriptae,* has been described as derived from "immemorial custom" as "from time to time declared in the decisions of the courts of justice * * * and digested for general use in the authoritative writings of the venerable sages of the law." *Id.* at 73.

imposition of punishments were well documented in the eighteenth century. Hawkins reported, for example, that a person who drew his sword on any judge, "whether he strike or not," in the presence of the King's courts, could "lose his Hand and his Goods, and the Profits of his Lands during Life, and suffer perpetual Imprisonment;" whereas those who disturbed such Courts "by threatening or reproachful Words to any Judge sitting in them" were "guilty of a High Misprision," and those who made "an Affray in the Palace–Yard near the said Courts, but out of their View" were subject to a severe fine and imprisonment "during the King's Pleasure." *Id.* at 57.

 The inherent power to punish for contempt has long been recognized as part of our country's common law. Perkins, *Criminal Law*, at 531 (citing *Eilenbecker v. District Court*, 134 U.S. 31, 36, 10 S.Ct. 424, 426, 33 L.Ed. 801, 804 (1890); *In re Shortridge*, 99 Cal. 526, 34 P. 227 (1893); *Austin v. City and County of Denver*, 156 Colo. 180, 397 P.2d 743 (1964); *In re Hayes*, 72 Fla. 558, 73 So. 362 (1916); *State ex rel. Pulitzer Pub. Co. v. Coleman*, 347 Mo. 1238, 152 S.W.2d 640 (1941)). "The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of [the] power [to punish for contempt]." *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205, 207–08 (1873). In *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242, 248 (1821), the United States Supreme Court stated that "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." The source of judicial authority in respect to contempt was cogently identified in *In re Cooper*, 32 Vt. 253, 257 (1859): "The power to punish for contempt is inherent in the nature and constitution of a court. *It is a power not derived from any statute*, but arising from necessity; implied, because it is necessary to

the exercise all other powers." (Emphasis added.)

### Rhode Island Contempt Statute: G.L.1956 § 8–6–1

The inherent power of our state's courts to punish for contempt was expressly recognized by the General Assembly in 1798 by the enactment of "An Act to Establish a Supreme Judicial Court in This State." Public Laws of 1798, Section 4. This act stated that the "Supreme Judicial Court [of Rhode Island] shall have power to * * * punish by fine or imprisonment, at the reasonable discretion of said Court, all contempts of authority in any cause or hearing before the same." Section 4 was eventually codified as G.L.1956 § 8–6–1, which provides that the Supreme and the Superior Courts "shall have power to punish, by fine or imprisonment, or both, all contempts of their authority;" § 8–10–38 extends the same power to the Family Court.

 Thus, we conclude that the Legislature intended § 8–6–1 as an affirmation of the inherent power of the courts of this state to punish for contempt of their authority and as a codification of the contempt powers of the courts at common law. Moreover, there has been no legislative enactment evincing an intent to delimit the fine or the term of imprisonment that the courts may impose for contempts.[2] Thus, because the General Assembly has imposed no limitation on the power of the courts to punish for contempt, we must ineluctably hold that the courts of this state possess inherent power to impose in their reasonable discretion such penalties as they deem appropriate.

The formulation of § 8–6–1 is strikingly similar to that of the federal contempt statute, and we are persuaded to give the same interpretation to § 8–6–1 as the United States Supreme Court has given to 18 U.S.C. § 401. The precursor of § 401 was § 17 of the Judiciary Act of 1789, ch. 20, which provided that the federal courts "shall have pow-

---

**2.** In *G. & P. Taylor & Co. v. Place*, 4 R.I. 324, 343 (1856), this Court held that the General Assembly may not constitutionally exercise *judicial* functions. Given our holding in *Taylor* and our conclusion that the power to punish for contempt rests inherently in the courts, were the General Assembly to enact legislation regulating the contempt powers of this state's courts, such action could give rise to a fundamental issue of separation of powers.

er to * * * punish, by fine or imprisonment, at the discretion of the said courts, all contempts of authority in any cause or hearing before the same." The "generality of this language suggests that § 17 was intended to do no more than expressly attribute to the federal judiciary those powers to punish for contempt possessed by English courts at common law." *Green v. United States,* 356 U.S. 165, 169, 78 S.Ct. 632, 635, 2 L.Ed.2d 672, 679 (1958). Hence, § 17 did not *grant* but, rather, *affirmed* the power of federal courts to punish certain contempts by fine or imprisonment, at the discretion of said courts. *Id.* at 179, 78 S.Ct. at 640, 2 L.Ed.2d at 685.

In 1831, Congress limited the exercise of the authority of the federal courts by the enactment of legislation that delineated the conduct that was punishable under the contempt powers of the courts. *Bloom v. Illinois,* 391 U.S. 194, 203, 88 S.Ct. 1477, 1482–83, 20 L.Ed.2d 522, 529 (1968). In the Act of 1831, 4 Stat. ch. 334, § 1, the offenses described as contemptuous are identical to those propounded in the present federal contempt statute, 18 U.S.C. § 401.

Section 401 of 18 U.S.C. differs in phraseology but not in substance from the Act of 1831 and provides that a federal court "shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

"(2) Misbehavior of any of its officers in their official transactions;

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

Although, since 1789, the federal statute has restricted the punishment for contempt to a fine or to imprisonment, and since 1831, has defined contempt in terms of the three categories cited *ante, Ex parte Robinson,* 86 U.S. (19 Wall.) at 510, 512, 22 L.Ed. at 207–08, 208, it is nonetheless indisputable that Congress has imposed no statutory limitation on the extent of the punishment that the federal courts may impose in sentencing for contempt under 18 U.S.C. § 401. *Green,* 356 U.S. at 188, 78 S.Ct. at 645, 2 L.Ed.2d at 690.

## Rule 42 of the Superior Court Rules of Criminal Procedure and Other Statutory Authority

■ Moreover, Rule 42 of the Superior Court Rules of Criminal Procedure, under which the Superior Court may punish all criminal contempts of its authority, imposes no restriction on the court's authority to punish contempts. Specifically, Rule 42(a) directs that in summary dispositions of criminal contempt, "[t]he order of contempt shall recite the adjudication and sentence." Similarly, in the dispositions of contempt upon notice and hearing under Rule 42(b), "[u]pon a verdict or finding of guilt the court shall enter an order fixing the punishment." Rule 42 is virtually identical to its federal counterpart, and neither rule sets limitations on sentences or maximum penalties for criminal contempt.

In addition, a number of statutes provide for the punishment of contempt in specific circumstances. None of these, however, specifies a maximum penalty for criminal contempt.[3] For example, G.L.1956 § 9–10–10, entitled "Penalty for failure of juror to attend," provides that any duly notified juror who fails to attend court as required and fails to give a satisfactory excuse for not attending, upon being judged in contempt, "shall be fined not less than twenty dollars ($20.00);" and § 10–9–23, entitled "Enforcement of writ by attachment as for contempt," provides that when any person to whom a writ of habeas corpus is directed refuses to receive or neglects to obey and execute the writ without sufficient excuse, the court "shall proceed forthwith, by process of attachment as for a contempt, to compel obedience to the writ and to punish the person guilty of the contempt."

### Common Law Offense Statute: G.L.1956 § 11–1–1.

The state contended, and we agree, that the inherent power of the courts to punish

---

**3.** *Cf.* G.L.1956 § 8–8–5 (power of District Court to punish contempt); G.L.1956 § 8–9–21, (power of Probate Courts to punish contempt); G.L.1956 § 27–13.1–4 (failure to obey court order).

for contempt of their authority is not controlled by the common law offense statute, § 11–1–1. The statute provides:

"Every act and omission which is an offense at common law, and for which no punishment is prescribed by the general laws, may be prosecuted and punished as an offense at common law. Every person who shall be convicted of any such offense which is a misdemeanor at common law shall be imprisoned for a term not exceeding one year or be fined not exceeding five hundred dollars ($500). Every person who shall be convicted of any such offense which is a felony at common law shall be imprisoned for a term not exceeding five (5) years or be fined not exceeding five thousand dollars ($5,000)."

Section 11–1–1 addresses offenses at common law for which the General Laws do not prescribe a punishment. This common law offense statute assures that a person who has committed an offense at common law cannot evade prosecution and punishment because the offense has not been declared a crime in the laws of the state. Wayne R. LaFave and Austin W. Scott, Jr., 1 *Substantive Criminal Law,* § 2.1(f) at 101 (1986). Because courts clearly possess inherent power to punish for contempt, we are firmly convinced that such a saving statute would be inapplicable and wholly unnecessary to ensure that contempts could be punished. Moreover, §§ 8–6–1, 8–10–38, 9–10–10, and 10–9–23 and Rule 42 fully evince the intent that contempt be punishable by fine or imprisonment without limitation on the court's power to punish. Because the courts of this state are endowed with inherent power to punish contempts, we hold that § 11–1–1 was not intended as a restraint on the courts' power to punish contempts of their authority in their discretion.

### Conclusion—Discretion to Punish Contempt

We conclude that contempt was a serious offense at common law for which courts could impose often severe punishments in their reasonable discretion. Moreover, "[t]he inherent power of courts to punish for contempt of their orders has long been recognized by our jurisprudence." *E.M.B. Associates, Inc. v. Sugarman,* 118 R.I. 105, 108, 372 A.2d 508, 509 (1977) (citing *Ex parte Robinson,* 86 U.S. (19 Wall.) at 510, 22 L.Ed. at 207).

 We recognize that courts, endowed with the power to impose severe punishment for contempt in their discretion, might abuse that discretion. The United States Supreme Court has held that "where Congress has not seen fit to impose limitations on the sentencing power for contempts the district courts have a special duty to exercise such an extraordinary power with the utmost sense of responsibility and circumspection. The 'discretion' to punish vested in the District Courts by § 401 is not an unbridled discretion. Appellate courts have here a special responsibility for determining that the power is not abused, to be exercised if necessary by revising themselves the sentences imposed." *Green,* 356 U.S. at 188, 78 S.Ct. at 645, 2 L.Ed.2d at 690. In consideration of both the authority of our state courts to punish contempt in their reasonable discretion as well as the responsibility of this Court to ensure that such power not be abused, we shall review a decision in respect to the punishment of contempt for abuse of that discretion.

In summary, we sustain the appeal of the state and reverse the judgment of the Family Court, to which we return the papers in this case.