**TOWN OF COVENTRY**

v.

**BAIRD PROPERTIES, LLC.**

No. 2009–133–Appeal.

Supreme Court of Rhode Island.

Feb. 7, 2011.

Christopher A. Anderson, Esq., North Scituate, for plaintiff.

Fred J. Volpe, Esq., North Kingstown, for defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on October 27, 2010, pursuant to an order directing the parties to appear and show cause why the issues in this appeal should not summarily be decided. The defendant, Baird Properties, LLC (defendant or Baird) appeals from: (1) a Superior Court order enjoining the defendant and "its member," Michael Baird, from harassing the intervenors, James and Lee Steitz (intervenors or Steitzes), and their attorney, Nicholas Gorham (Gorham); (2) the denial of Baird's motion for a temporary restraining order against Gorham; and (3) the trial justice's finding that Baird was in contempt of a previously entered restraining order. After reviewing the memoranda submitted by the parties and counsel's arguments, we are satisfied that cause has not been shown; thus, the appeal may be decided at this time. We affirm.

### Facts and Travel

This controversy arose from various zoning violations defendant committed on a large parcel of land on Gibson Hill Road in Coventry, Rhode Island. On January 2,

2008, Jacob Peabody (Peabody), associate town planner and zoning enforcement officer for plaintiff, the Town of Coventry (plaintiff or town), received a complaint that someone was "cutting trees, burying stumps, and strip[p]ing the topsoil from the property at the end of the improved section of Gibson Hill Road." Upon inspection, Peabody found that approximately two acres of land had been excavated—trees had been uprooted and a large hole had been dug and filled with stumps. Peabody issued a notice of violation to the property owner, Baird Properties, LLC, for failure to file an "approved soil erosion and sedimentation control plan," a requirement in Coventry for any planned change in grade or excavation of land. Baird was ordered to cease work on Gibson Hill Road until he submitted and received plan approval. Baird ignored this order.

On February 19, 2008, Peabody returned to inspect the Gibson Hill Road property. He discovered that work was continuing in full force; topsoil was being excavated, loaded into trucks, and then transported to a business identified as "Route 3 Mulch and More." Peabody spoke with Baird on March 12, 2008, and Baird agreed to cease work until an approved plan was in place. Work temporarily stopped. On June 18, 2008—in response to a complaint—Peabody returned to inspect the property and discovered that excavation had again commenced at the site.

Peabody issued a "Notice to Prosecute" on June 19, 2008, and scheduled a meeting the next day with Baird, Scott Moorhead (Baird's engineer), and Bruce Hagerman, the town engineer. Baird did not attend. In his absence, a plan was discussed that, according to Peabody, involved "proper

erosion control measures, a construction entrance, stockpiling of loam on site and a restoration plan that would leave the site with a similar amount of loam prior to disturbance." Shortly thereafter, Peabody spoke with Baird about the proposed plan. However, Baird refused to return any topsoil to the site because he contended that he needed to sell the material to pay the mortgage on the property. On June 20, 2008, Peabody issued a "Cease and Desist Order" and a second "Notice of Violation." Undeterred, Baird continued to excavate the Gibson Hill Road property.

On July 8, 2009, the town turned to the Superior Court, seeking injunctive relief against defendant. The plaintiff town sought: (1) a restraining order enjoining defendant from any and all excavation and/or earth-removal activity at the Gibson Hill Road property; (2) an order requiring defendant to file a "Soil Erosion and Sedimentation Control Plan;" (3) an order requiring defendant to file a restoration plan for the property; and (4) a $500 fine for each day the violations continued.

That same day, abutting property owners James and Lee Steitz moved to intervene in reliance upon Rule 24 of the Superior Court Rules of Civil Procedure. The Steitzes argued that intervention was proper based on their status as an aggrieved party as defined in G.L.1956 § 45–24–31(4)(ii). Over defendant's objection, the motion was granted; and on July 15, 2008, a temporary restraining order (TRO) was issued enjoining defendant from removing earth from the property and requiring defendant to file a soil erosion and sedimentation control plan by July 11, 2008,[1] and a restoration plan within thirty days of the order.[2] Additionally, defen-

---

**1.** Although inconsistent, the abovementioned dates are those reflected in the TRO.

**2.** The defendant was permitted to prepare up to thirty acres of the lot for hay, and up to fifty acres of the lot for planting Christmas

dant was prohibited from performing any work on Saturdays or Sundays, and it was required to maintain, at all times, a 100–foot buffer between intervenors' property and the excavation activity.

On September 12, 2008, the Steitzes filed a motion to adjudge defendant in contempt. In an affidavit, Lee Steitz stated that on July 21, 2008, she witnessed an excavator loading soil into a dump truck on defendant's property; she added that, once full, the truck drove off the property in violation of the TRO. On September 17, 2008, the Town of Coventry also filed a motion to adjudge defendant in contempt, alleging various violations of the TRO. These motions were scheduled for hearing on September 19, 2008; however, counsel for all parties notified the trial justice that because an agreement had been reached an evidentiary hearing was not necessary. Nonetheless, the trial justice emphasized the seriousness of defendant's disregard of the TRO. He stated:

> "[T]he Court is keeping all its options open but you give the Court very little choice when you fail to comply with the order. We analyzed it and we tried to stretch it * * * to the limit, the depravation of your liberty, and that's to avoid putting you in the ACI and to avoid imposing any significant punishment on Baird Properties[.] * * * I don't like to put people in jail, * * * but you don't want to continue to place the Court in a position where it has no choice, because the Court is supposed to be able to enforce its orders. So, I know you talked to your attorney about it but I can't underscore the importance of your abiding by the orders. I will just leave it at that. Consider yourself warned."

The agreement reached between the parties was entered as a consent judgment in Superior Court on October 17, 2008. The consent judgment largely echoed the original TRO, but included additional requirements.[3] Additionally, defendant admitted that he was in willful contempt for numerous violations of the previously entered TRO. Another temporary restraining order was issued on October 17, 2008, enjoining defendant from harassing intervenors and/or their counsel, Gorham. This order was to remain in effect until November 14, 2008.

On November 7, 2008, intervenors filed yet another motion to adjudge defendant in contempt, alleging that defendant had violated the terms of the consent judgment. The next day, defendant filed a motion for a preliminary injunction against Gorham, requesting that the court enjoin Gorham from interfering with defendant and/or entering on defendant's properties. On November 14, 2008, the town sought a finding of contempt of the consent judgment based on defendant's failure to comply with its terms.

Hearings were held on November 14 and 24, 2008; both sides presented witnesses, and defendant was found in contempt of the consent judgment. In a decision read from the bench on November 24,

---

trees, but it was permitted to do so only in five-acre allotments as monitored by the town. Baird was required to notify the town planning and zoning department before commencing work in each section.

**3.** The defendant was ordered to restore eight loads of gravel to the property and file a new restoration plan and cease all work until the plan was approved. The town was permitted to enter the property for random inspections; and defendant was required to post and maintain a bond in the sum of $100,000 with surety, or pay $25,000 cash into the court registry "to guarantee the full and satisfactory performance of each and every obligation created by this Order to the satisfaction of the Court."

2008, the trial justice—noting that none of the previously imposed sanctions seemed to deter defendant—sentenced defendant to serve one and one-half days in the Adult Correctional Institutions (ACI), in addition to a $1,500 fine. A "Second Contempt Order," the language of which was agreed to by defendant and the Town of Coventry, was issued on November 24, 2008; in it, defendant admitted to numerous violations of the previous orders. The defendant served his time in the ACI from November 24 to November 26, 2008.

On December 8, 2008, intervenors filed a motion seeking a permanent injunction, and a hearing was held on February 2, 2009. In light of the evidence presented at that hearing, as well as at the many prior hearings, the trial justice granted intervenors' motion, and a permanent injunction was entered in which Baird was "restrained and enjoined from harassing the [i]ntervenors" and their attorney.

The defendant filed a notice of appeal on December 26, 2008, and again on February 3, 2009. Although defendant raises numerous issues in this appeal, defendant does so in a summary fashion, with little argument and absolutely no citation to authority to support his several contentions. This Court frequently has stated that summarily listing issues for appellate review, "without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n. 1 (R.I.2002). *See also Ayriyan v. Ayriyan*, 994 A.2d 1207, 1213 n. 8 (R.I.2010); *Manchester v. Pereira*, 926 A.2d 1005, 1015 n. 8 (R.I.2007).

However, in spite of this deficiency, we nonetheless shall address the merits of those arguments that we deem to be appropriately developed. The defendant contends the trial justice erred: (1) by allowing the Steitzes to intervene; (2) when he denied defendant's motion for a restraining order against Nicholas Gorham; and (3) by finding defendant in contempt and sentencing him to serve one and one-half days in the ACI.[4] We shall address these remaining arguments in turn.

## Analysis

### 1. Intervention

■ Rule 24(a)(2) provides for intervention as of right when a party establishes that his or her interests are not adequately represented by the current litigants. This Court reviews a trial justice's grant of a motion to intervene for abuse of discretion, reversing only if the justice failed to apply the standards set forth in Rule 24(a)(2), or otherwise committed clear error.

The Steitzes filed a motion to intervene based on Rule 24(a)(1) and (2), contending that their status both as abutters and as aggrieved parties under § 45–24–31 entitled them to intervention. Rule 24(a) provides that an applicant may intervene in an action (1) "when a statute of this state confers an unconditional right to intervene" or (2) "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

4. In a single-sentence paragraph defendant also alleges that the trial justice erred when he enjoined Baird from harassing intervenors based "on the most innocuous evidence." We decline to address this issue.

■ The defendant contends that intervention was improper because only the town has standing to prosecute violations of its zoning ordinances. The intervenors argue that they qualify to intervene under both Rule 24(a)(1), the statutory right provision, and Rule 24(a)(2); concerning the latter provision, intervenors contend that their interests may not be adequately protected by the existing contestants. We are unaware of any statutory provision that provides for intervention. Therefore, we shall confine our analysis to the second ground for intervention as set forth in Rule 24(a)(2).

■ Intervention will be allowed if an applicant establishes "some tangible basis to support a claim of purported inadequacy" of representation by the current contestants. *Credit Union Central Falls v. Groff*, 871 A.2d 364, 368 (R.I.2005) (quoting *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197, 207 (1st Cir.1998)). In construing the similar federal rule, the United States Supreme Court has stated that this burden should be considered minimal; "[t]he requirement of the [r]ule is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).

We note that defendant has failed to file a transcript of the hearing relative to the motion to intervene, which would contain the arguments made by intervenors establishing that their interests were not adequately represented by the Town of Coventry. However, the record before us makes clear that the Town of Coventry primarily was concerned with ensuring defendant's compliance with its zoning ordinances. In contrast, the Steitzes sought to remedy a continuing nuisance caused by defendant's illegal excavation work—a particularly relevant concern in light of Baird's flagrant disregard of the zoning laws. In light of the minimal threshold showing necessary to warrant intervention, we are satisfied that the Steitzes' interests were sufficiently different from those of the town. We thus affirm the trial justice's grant of intervention.

## 2. Denial of Defendant's Motion for a Preliminary Injunction

■ General Laws 1956 § 9–24–7 provides that the grant or denial of a preliminary injunction is an appealable order. *Iggy's Doughboys, Inc. v. Giroux,* 729 A.2d 701, 705 (R.I.1999). However, because the decision to grant or deny a preliminary injunction "rests within the sound discretion of the hearing justice," we review that decision under an abuse-of-discretion standard of review. *Id.*

The defendant argues that the trial justice erred in denying his motion for a preliminary injunction against Gorham. The motion requested that Gorham be "restrained and enjoined from interfering with [defendant]" and/or from entering on defendant's real estate. The trial justice denied this motion because, *inter alia,* he did not believe the Superior Court had personal jurisdiction over Gorham. The defendant contends that by "filing and agreeing" to the consent judgment, Gorham became a party to the action, and subject to the court's jurisdiction. This argument is without merit.

■ This Court repeatedly has held that a "fundamental principle of procedural due process is that a court may not issue a judgment or order against a person in the absence of personal jurisdiction." *In re Stephanie B.*, 826 A.2d 985, 993 (R.I.2003). In *Guertin v. Guertin,* 870 A.2d 1011, 1013 (R.I.2005), a father brought suit against his ex-wife to modify the existing custody agreement concerning their daughter. In response to the ex-wife's request, the trial

justice restrained and enjoined the child's stepmother—who was not a party to the suit—from handling any of the child's prescription medication. *Id.* at 1016. On appeal, this Court vacated that order on the ground that the Family Court did not have personal jurisdiction over the stepmother. *Id.* at 1020. We held that mere presence in court or knowledge of the proceedings does not vest the trial court with jurisdiction over a person who is not a party to the action. *Id.* at 1020 n. 5. Rather, one who is named in the pleadings and has been properly served with process or who otherwise has entered an appearance is deemed a party. *Id.* at 1020. Moreover, "[a]n appearance is '[a] coming into court *as party* to a suit, either in person or by attorney, whether as plaintiff or defendant.'" *Nisenzon v. Sadowski,* 689 A.2d 1037, 1048 (R.I.1997) (quoting Black's Law Dictionary 97 (6th ed.1990)).

■ In the case at bar, the trial justice correctly concluded that the Superior Court lacked the requisite personal jurisdiction over Gorham. Despite his participation in the suit as counsel for intervenors, he was neither named as a party, nor did he enter an appearance *on his own behalf.* Mere presence in court while serving as an advocate for a client does not vest a trial court with personal jurisdiction over an attorney. Therefore, we affirm the trial justice's denial of defendant's motion for a preliminary injunction.

### 3. Contempt

■ We now turn to the issue of contempt. "The authority to find a party in civil contempt is among the inherent powers of our courts." *Now Courier, LLC v. Better Carrier Corp.,* 965 A.2d 429, 434

(R.I.2009). Such a finding requires a demonstration, by clear and convincing evidence, that a sufficiently specific order of the court has been violated. *Id.* (citing *State v. Lead Industries Association,* 951 A.2d 428, 464 (R.I.2008)). Upon review, this Court will accord great deference to a trial justice's finding of contempt. *Ayriyan,* 994 A.2d at 1215. We will not disturb the findings of a trial justice absent clear error or an abuse of discretion. *Now Courier, LLC,* 965 A.2d at 434.

■ General Laws 1956 § 8–6–1 grants the Superior Court "power to punish, by fine or imprisonment, or both, all contempts of [its] authority." Such punishment may be criminal or civil in nature: each type serves a unique purpose and requires distinct procedural safeguards.[5] The purpose of civil contempt is to "coerce the contemnor into compliance with the court order and to compensate the complaining party for losses sustained." *Now Courier, LLC,* 965 A.2d at 434 (quoting *Gardiner v. Gardiner,* 821 A.2d 229, 232 (R.I.2003)). Thus, the hallmark of civil contempt is "the ability to purge the contempt at will" by compliance with the court's orders. *In re Carrie T.,* 516 A.2d 883, 885 (R.I.1986). In contrast, criminal contempt is punitive in nature; it is imposed to punish willful violation of a court order, to "vindicate the court's authority and dignity." *State v. Price,* 672 A.2d 893, 895 (R.I.1996) (quoting 17 *Am.Jur.2d Contempt* § 232 (1990)). As such, it is typically imposed for a definite term, and the contemnor is entitled to strict procedural protections set out in Rule 42(b) of the Superior Court Rules of Criminal Procedure.[6]

---

**5.** For a full discussion of the history of the contempt power and its evolution in Rhode Island, *see State v. Price,* 672 A.2d 893 (R.I. 1996).

**6.** Rule 42(b) of the Superior Court Rules of Criminal Procedure provides:

"*Disposition Upon Notice and Hearing.* A criminal contempt except as provided in

Despite these seemingly clear distinctions, the lines between criminal contempt and civil contempt often are blurred. Because the determination of the type of contempt is based on the sanction imposed, the court must take a backward look to ascertain whether the appropriate process was afforded, rather than ensuring the proper procedural safeguards are present from the beginning. In other words, "the analysis as to whether a contempt finding is civil or criminal puts the cart before the horse." Robert H. Whorf, *The Boundaries of Contempt: Must the Court's Power Yield to Due Process?*, R.I.B.J. 9, 47 (May, 1998).

In the case at bar, a "Second Contempt Order" was issued on November 24, 2008, in which Baird admitted to five separate violations of previously issued court orders. This order further provided that, based on this admission, the Court may impose "any such fines and penalties, including incarceration at the Adult Correctional Institution[s] for violations of this Order by Baird Properties, LLC[,] its agents, employees, servants, contractors, sub-contractors, and/or assigns" as it deems necessary. That same day, after a long hearing, the trial justice found Baird in contempt of court. In accordance with the order, he was sentenced to serve one and one-half days in the ACI and ordered to pay a $1,500 fine.

█ Before this Court, the defendant contends that the contempt finding and

sentence constituted error "based on the evidence presented [at the] hearing." However, in the November 24, 2008, "Second Contempt Order," the defendant not only admitted to five separate violations of previous orders, but also agreed that the trial justice could institute any penalty he deemed fit, including incarceration at the ACI. By submitting to this order, the defendant consented to the contempt finding and waived his right to appeal. "If a court order is to have any validity in a civil case, it must be made apparent to litigants that said order will be enforced. A coercive sanction which dissolves upon willful non-compliance is obviously of no significant aid in enforcing a judicial decree." *In re Ryan,* 539 A.2d 74, 75–76 (R.I.1988).

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment and remand the papers to the Superior Court.

subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the justice in open court in the presence of the defendant or, on application of an attorney for the State or of an attorney appointed by the court for that

purpose, by an order to show cause or an order of arrest. The defendant is entitled to admission to bail as provided in these rules. In a proceeding under this subdivision, if the contempt charged involves disrespect to or criticism of a justice, that justice is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."