February 9, 2022

**Supreme Court**

No. 2020-40-M.P.
(A.A. 18-187)

Verizon New England Inc.        :

v.        :

Neena S. Savage, in her capacity as        :
Tax Administrator for the State of
Rhode Island.

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email:    opinionanalyst@courts.ri.gov,    of    any typographical or other formal errors in order that corrections may be made before the opinion is published.

Verizon New England Inc.　　　:

v.　　　　　　:

Neena S. Savage, in her capacity as　:
Tax Administrator for the State of
Rhode Island.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court

on November 4, 2021, pursuant to a writ of certiorari issued upon petition by the

City of Pawtucket (Pawtucket) and the City of Cranston (Cranston) (collectively

movants).[1]  The movants seek review of a decision by the Sixth Division District

Court denying their motions to intervene in an action commenced by the plaintiff,

Verizon New England Inc. (Verizon), by way of appeal from a decision of the

defendant, the Tax Administrator for the State of Rhode Island.[2]  According to the

---

[1] In the Sixth Division District Court, the cities of Pawtucket and Cranston were the
moving parties seeking to intervene in an administrative appeal by application to the
court.  Therefore, herein they are referred to collectively as "movants."

[2] The state tax administrator did not appear in this action before this Court.

movants, the trial judge erred in determining that those cities' interests in this controversy would be adequately represented by the City of Providence (Providence), an intervenor in this case. For the reasons set forth in this opinion, we affirm the order of the District Court denying the motions to intervene.

**Facts and Travel**

This controversy arose from Verizon's challenge to a 2018 final decision of the tax administrator that upheld an assessment of Verizon's tangible personal property (TPP) tax and denied Verizon's request for a lower assessment and a partial refund for TPP taxes paid from 2010 through 2014. On December 21, 2018, Verizon filed an administrative appeal in the District Court in accordance with G.L. 1956 § 8-8-24, seeking to set aside the tax administrator's final decision, alleging that the tax administrator failed to apply the proper depreciation approach, which, according to Verizon, resulted in excessive assessments and overpayments totaling approximately $21,358,152.

Initially, on February 27, 2019, the District Court heard and denied motions filed by the tax administrator to dismiss this case for failure to join indispensable parties and, alternatively, to join indispensable parties—the state's thirty-nine cities and towns and the Department of Revenue Division of Municipal Finance.

In October 2019, Providence moved to intervene as of right, followed by Pawtucket and Cranston. In its memorandum in support of its motion, Providence

claimed an interest in the TPP tax and contended that, under G.L. 1956 § 44-13-13, most of the TPP tax is "apportioned to the cities and towns[,]" and, thus, Providence's interests could be substantially impacted by the outcome of the action.[3]

Significantly, in their motions to intervene, movants merely adopted Providence's memorandum of law and the arguments therein and presented no additional contentions separate from those offered by Providence.

On January 14, 2020, the District Court held a hearing on the motions to intervene. The trial judge granted Providence's motion and denied movants' motions. The trial judge carefully reviewed the four requisites necessary for intervention[4]—namely that (1) the applicant files a timely application, which was

---

[3] Pursuant to G.L. 1956 § 44-13-13, of the total TPP tax that is paid to the state, an amount "not to exceed three quarters of one percent (.75%)" is payable to the department of revenue for administrative expenses and "identified as general revenue" and the remainder is "apportioned to the cities and towns * * * on the basis of the ratio of the city or town population to the population of the state as a whole * * * and may be recorded as a receivable[.]" Section 44-13-13(6)(i)-(ii).

[4] In reviewing these four factors, the trial judge cited *Marteg Corporation v. Zoning Board of Review of City of Warwick*, 425 A.2d 1240 (R.I. 1981), and *Tonetti Enterprises, LLC v. Mendon Road Leasing Corp.*, 943 A.2d 1063 (R.I. 2008). *See Marteg Corporation*, 425 A.2d at 1242 (discussing pre-amendment language of Super. R. Civ. P. 24(a)(2)); *see also Tonetti Enterprises, LLC*, 943 A.2d at 1072-73 (same). As discussed in further detail *infra*, there exists limited caselaw interpreting Rule 24(a) of the District Court Civil Rules. Therefore, both this Court and the District Court will look to caselaw interpreting Rule 24(a) of the Superior Court Rules of Civil Procedure, which prior to 1995 contained language identical to the current District Court rule. *See Tonetti Enterprises, LLC*, 943 A.2d at 1071-72 (looking to caselaw interpreting certain rules of the Superior Court Rules of Civil Procedure for guidance on District Court rules).

not at issue in this case; (2) the applicant claims an interest relating to the property or transaction; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by the current parties to the action.

The trial judge determined that all three cities satisfied the second and third requirements, but further found that Providence adequately represented the interests of both Pawtucket and Cranston. Specifically, with respect to the second requirement, the trial judge found that, because the three cities are direct beneficiaries of the TPP tax, and thus have an economic interest that is intertwined with the tax revenue at issue and any future distributions, they have an interest relating to the property or transaction in dispute—namely, Verizon's request for a lower tax assessment. With respect to the third requisite, the trial judge found that the cities had no other avenue to protect their interests in the event of an adverse ruling. Finally, while acknowledging that the fourth requirement generally involved a minimal threshold, the trial judge found that the cities' interests were not adequately represented by the state agency and that intervention was appropriate. Apparently concerned with an influx of motions to intervene from multiple municipalities in the state, and because movants had simply relied upon Providence's memorandum and arguments in support of their own motions to intervene, the trial judge found that the interests of Pawtucket and Cranston would

be adequately represented by Providence, which was allowed to intervene as of right. An order entered in the District Court on January 16, 2020, memorializing the trial judge's decision.

The movants filed a petition for writ of certiorari pursuant to § 8-8-32, which this Court granted on June 25, 2020.[5] The movants had argued in support of their petition that the trial judge erred in concluding that Providence adequately represented their interests when Providence was not yet a party—a finding to which movants were not afforded an opportunity to respond—and that the proper inquiry was whether the parties to the action at the time of the hearing on their motions, which did not then include Providence, adequately represented movants' interests. Accordingly, in granting certiorari we remanded the record to the District Court with direction to "allow [p]etitioners the opportunity to set forth, with particularity, what their individual interests in the matter are and why those interests cannot be adequately represented by the City of Providence" and to issue a decision on the motions to intervene setting forth the court's findings and reasoning therefore.

---

[5] Pursuant to G.L. 1956 § 8-8-32,

> "Any party in interest, if aggrieved by a final judgment rendered in proceedings [in the District Court], may within twenty (20) days from the date of entry of the judgment petition the supreme court of the state of Rhode Island for a writ of certiorari to review any questions of law involved."

On remand, the trial judge again determined that movants' interests were adequately represented by Providence, and he denied their motions to intervene. The trial judge concluded that the ultimate issue in the case was the "statutory interpretation of accumulated depreciation" and that, except for the varying distribution to each municipality under the law, movants' interests and arguments were identical to those of Providence—being that the proper calculations were performed by the tax administrator and the taxes were correctly paid and distributed. As a result, an order on remand entered on September 10, 2020, denying movants' request to intervene, and the case was returned to this Court.[6]

## Standard of Review

"Our review of a case on certiorari is limited to an examination of the record to determine if an error of law has been committed." *State v. Poulin*, 66 A.3d 419, 423 (R.I. 2013) (quoting *State v. Greenberg*, 951 A.2d 481, 489 (R.I. 2008)). "In addition to examining the record for judicial error, 'we inspect the record to discern if there is any legally competent evidence to support the findings of the hearing justice below.'" *Id.* (quoting *Brown v. State*, 841 A.2d 1116, 1121 (R.I. 2004)). "We

---

[6] The Court notes that movants' appendix submitted in this Court includes certified transcribed copies of the audio recordings of the District Court hearings on the motions to intervene, which occurred on January 14, 2020, and September 3, 2020. At oral argument before this Court on November 4, 2021, Verizon stipulated to having no objection to the transcriptions. Our independent review of the audio recordings transmitted from the District Court to this Court on certiorari reveals no discrepancies in movants' transcribed record.

shall not disturb the findings of the trial justice unless it is established that he or she misconceived or overlooked relevant and material evidence or was otherwise clearly wrong." *WMS Gaming, Inc. v. Sullivan*, 6 A.3d 1104, 1111 (R.I. 2010) (quoting *New England Telephone and Telegraph Co. v. Clark*, 624 A.2d 298, 300 (R.I. 1993)).

Additionally, "[t]his Court reviews a trial justice's [decision on] a motion to intervene for abuse of discretion, reversing only if the justice failed to apply the standards set forth in Rule 24(a)(2), or otherwise committed clear error." *Town of Coventry v. Baird Properties, LLC*, 13 A.3d 614, 619 (R.I. 2011).

**Discussion**

Rule 24(a)(2) of the District Court Civil Rules provides for intervention as of right when "[u]pon timely application * * * the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action[.]"[7] The relevant language of that rule and Rule 24 of the Superior Court Rules of Civil Procedure were identical prior to a 1995 amendment to the Superior Court rule for intervention as of right, which was enacted in order to align with its federal counterpart.[8] *See* Reporter's Notes to Dist. Ct. Civ.

---

[7] The Reporter's Notes to Rule 24 of the District Court Civil Rules provides that "[c]ircumstances in which intervention would be appropriate in the District Court are rare."

[8] Prior to the 1995 amendment, Rule 24(a) of the Superior Court Rules of Civil Procedure read: "Upon timely application anyone shall be permitted to intervene in an action * * * when the representation of the applicant's interest by existing parties

R. 24; Super. R. Civ. P. 24(a).  Notably, in *Marteg Corporation v. Zoning Board of Review of City of Warwick*, 425 A.2d 1240 (R.I. 1981), which was decided prior to the amendment, this Court analyzed one's right to intervene in a Superior Court action according to the four elements that now comprise Superior Court Rule 24(a).[9] *See Marteg Corporation*, 425 A.2d at 1242.  Because we have held that the language of District Court Rule 24(a)(2)—albeit in the context of the pre-amendment Superior Court rule—is applicable by way of the test set forth in *Marteg*, it was appropriate for the trial judge in the present case to follow that test in evaluating whether an

---

is or may be inadequate and the applicant is or may be bound by a judgment in the action * * *." *Marteg Corporation*, 425 A.2d at 1242 n.1 (applying pre-amendment language of Super. R. Civ. P. 24(a)).  The Committee Notes to the Superior Court rule state that the 1995 amendment to subdivision (a) followed the 1966 amendment to its federal counterpart.

[9] Despite the revision to the Superior Court rule in 1995, the test applied to a Superior Court motion to intervene has not changed.  The Superior Court rule provides that:

> "Upon timely application anyone shall be permitted to intervene in an action:
>
> "* * *
>
> "When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Super. R. Civ. P. 24(a)(2).

applicant should be allowed to intervene as of right in a District Court proceeding.

*See id.*

To establish a right to intervene, movants were required:

> "(1) to file timely application for intervention, (2) to show an interest in the subject matter of that action in that the disposition of the action without intervention would as a practical matter impair or impede their ability to protect that interest, and (3) to establish that their interest was not adequately represented by the existing parties." *Marteg Corporation*, 425 A.2d at 1242.

On review, movants do not challenge the trial judge's findings with respect to the first two components[10] of this rule; rather, they contend that the trial judge erred in finding that Providence would adequately represent their interests because, they contend, he focused too narrowly on the parties' positions—specifically, that each city is aligned with and supports the tax administrator's statutory interpretation of accumulated depreciation under § 44-13-13 and the conclusion that Verizon's TPP tax was correctly assessed. The movants argue that the trial judge failed to consider the cities' distinct interests in how a "refund * * * would be accomplished by the District Court in the event that Verizon's interpretation of the tax statute prevails."

---

[10] The first two uncontested components of the rule for intervention as of right are comprised of three elements, namely (1) a timely filed application; (2) an interest in the subject matter of the action; and (3) a showing that the disposition of the action without intervention would as a practical matter impair or impede the ability to protect that interest. *See e.g.*, *Retirement Board of Employees' Retirement System of City of Providence v. Corrente*, 174 A.3d 1221, 1229 (R.I. 2017).

Additionally, movants assert that, because the burden of showing inadequate representation is minimal, they need only demonstrate "some tangible basis" that their interests "may" be at risk.

Verizon, on the other hand, contends that precedent requires movants to "show [an] adverse legal position with Providence * * * to make a compelling showing of inadequate representation." (Citing *Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013); *Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984); and *Retirement Board of Employees' Retirement System of City of Providence v. Corrente*, 174 A.3d 1221 (R.I. 2017).) Because movants cannot make a compelling showing, Verizon argues, the trial judge "acted within [his] discretion in denying the [m]otions." Verizon also asserts that movants have not demonstrated a direct interest relating to the property or transaction that is subject to the action. We first address movants' burden.

This Court has recognized that "Rhode Island precedent [concerning whether representation is adequate] is sparse"; as such, we "may properly look to the federal courts for guidance." *Corrente*, 174 A.3d at 1230 (quoting *Tonetti Enterprises, LLC v. Mendon Road Leasing Corp.*, 943 A.2d 1063, 1073 (R.I. 2008)). Typically, the proponent of intervention need only establish "'some tangible basis to support a claim of purported inadequacy' of representation by the current [parties,]" *Baird Properties, LLC*, 13 A.3d at 620 (quoting *Credit Union Central Falls v. Groff*, 871 A.2d 364, 368 (R.I. 2005)), and such burden is "considered minimal[.]" *Id.* (citing

- 10 -

*Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972)). When the burden is considered minimal, "the requirement of the rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Id.* (brackets omitted) (quoting *Trbovich*, 404 U.S. at 538 n.10).

However, a compelling showing may be necessary when the intervenor's "interest is identical to that of one of the present parties, or if there is a party charged by law with representing the [proposed intervenor's] interest[.]" 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1909, 394-95 (3d ed. 2007). Significantly, a presumption of adequate representation arises when either "the goals of the applicants are the same as those of the plaintiff or defendant," or "the government in defending the validity of the statute is presumed to be representing adequately the interests of all citizens who support the statute." *Daggett v. Commission on Governmental Ethics and Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999); *see Corrente*, 174 A.3d at 1230. "To overcome that presumption, [one seeking to intervene] ordinarily must demonstrate adversity of interest, collusion, or nonfeasance." *United Nuclear Corporation v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982) (quoting *Moosehead Sanitary District v. S.G. Phillips Corporation*, 610 F.2d 49, 54 (1st Cir. 1979)); *see Town of Coventry v. Hickory Ridge Campground, Inc.*, 111 R.I. 716, 722-23, 306 A.2d 824, 828 (1973) (determining that when the Superior Court established that the town solicitor

inadequately represented the interests of the town's citizens by failing to appear in court and prematurely entering into a consent decree, intervention was warranted).

However, factors such as adversity of interest, collusion, or nonfeasance are not exclusive. *See, e.g.*, *Daggett*, 172 F.3d at 111. An intervenor may support a claim of inadequacy of representation by demonstrating that there is "an actual conflict of interests[,]" *id.* at 112, or that "its interests are sufficiently different in kind or degree from those of the named party." *B. Fernández & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006); *see Corrente*, 174 A.3d at 1230 (concluding that the intervenors rebutted the presumption by demonstrating that "a vast gulf" existed between the positions of the intervenors—the city and its mayor—and the government agency, the retirement board); *see also Groff*, 871 A.2d at 368 (holding that the intervenor established an interest different in kind from the current parties because she not only claimed an interest in the funds, she claimed an interest that was superior to that of the other parties).

This Court has determined that, where a party is presumed to represent the intervenor's interest or position, the one seeking intervention must simply provide "an adequate explanation as to why what is assumed—here, adequate representation—is not so." *Corrente*, 174 A.3d at 1230 (quoting *Maine v. Director, United States Fish and Wildlife Service*, 262 F.3d 13, 19 (1st Cir. 2001)). Nevertheless, "the tests of inadequacy may vary with the strength of the interests."

- 12 -

*Maine*, 262 F.3d at 20 (citing *Daggett*, 172 F.3d at 111); *see* Wright, cited *supra*, § 1909 (explaining that, where the interests are not identical but are similar, "[a] discriminating appraisal of the circumstances of the particular case is required" and the court should consider the degree of difference between interests).

In the case at bar, the merits of the underlying controversy concern a question of law. Because movants and Providence have presented identical goals—that the state's interpretation of accumulated depreciation and assessment of Verizon's TPP tax should be upheld—there is a presumption of adequate representation in this case. *See United Nuclear Corporation*, 696 F.2d at 144 (determining that a presumption of adequate representation existed where the movants' interests were no different in kind from and the litigation goal, of upholding the constitutionality of the statute, was aligned with a party to the action); *see also Corrente*, 174 A.3d at 1230 (although a presumption of adequate representation applied where a government entity was a party, presumption was overcome by adverse positions between the current parties and the intervenors). The movants do not hold positions that are adverse to that of Providence.

The record discloses that the trial judge initially considered movants' burden of establishing inadequacy of representation to be minimal, but on remand, he required movants to make a compelling showing of inadequate representation. However, the proper standard lies in the middle. In this case, to overcome the

presumption, it was incumbent upon movants to provide a tangible basis for intervention, *Baird Properties, LLC*, 13 A.3d at 620, and an adequate explanation as to why their interests were not "adequately represent[ed]" by Providence. *Corrente*, 174 A.3d at 1230 ("This is a fact-intensive determination that 'must be determined in keeping with a commonsense view of the overall litigation.'") (quoting *Maine*, 262 F.3d at 19). They failed to do so.

On remand in the District Court, movants expressed serious concern about the specter of a settlement or judgment that would require a refund to Verizon; movants implied that a refund would result in a clawback of previous payments. Specifically, they speculated that, because the three cities each have their "own unique set of fiscal and budgetary challenges, concerns, and priorities[,]" in the event the state and Verizon negotiate a settlement, "Providence will push for a settlement or order that is structured in a way that best fits Providence's fiscal and budgetary priorities" rather than those of movants. The movants also argued that any refund to Verizon would cause havoc to those cities' distinct "fiscal and budgetary challenges, concerns, and priorities[,]" namely because how such a refund would be accomplished is unknown. It matters not whether these contentions are analyzed by the District Court utilizing the higher burden of a compelling showing of inadequate representation as employed—incorrectly, we note—or using the less burdensome standard of a tangible basis for intervention and an adequate explanation as to why

- 14 -

that interest would not be adequately represented by Providence. The conclusion is the same; because movants failed to demonstrate that a cognizable distinction in their interests exists on the merits from those of Providence, there is no tangible basis for intervention. We reject the contention that the possibility of a settlement (which exists in every case) amounts to a tangible basis for intervention. We now turn to the issue of the adequacy of representation.

Because the level of adequacy of representation "may vary with the strength of the interests[,]" *Maine*, 262 F.3d at 20, a clear understanding of movants' interests is important. On the merits, Verizon claims that the tax administrator deviated from the statutorily required method of calculating accumulated depreciation by failing to consider all factors that impact the value of Verizon's TPP. This misapplication, according to Verizon, led to an overstated assessment of its taxable TPP and excessive tax payments to the state for the calendar years from 2009 through 2014. Verizon claims that, as a result, it is entitled to a partial refund.

Although the ultimate interpretation of accumulated depreciation may determine *if* Verizon is entitled to a refund or credit, *how* that refund or credit is managed or administered is not before the trial judge. *See* G.L. 1956 § 44-1-4.[11]

---

[11] General Laws 1956 § 44-1-4 provides that "[t]he tax administrator is authorized and empowered to make rules and regulations, as the administrator may deem necessary for the proper administration and enforcement of the tax laws of this state."

- 15 -

Specifically, it is the tax administrator and the director of administration who are vested with the authority to manage refunds and credits.[12] *See* § 44-1-11; *see also* § 44-13-16.[13]  Additionally, there is no claim for monetary relief from Providence or from movants.  The movants' primary contention supporting intervention concerns how a refund or credit will be administered under § 44-1-11 if Verizon prevails or the parties reach a settlement.  The movants submit that this gives rise to

---

[12] The movants take issue with the relief Verizon requests.  Although a party may request specific relief, it is a different question as to whether the court may order such relief without encroaching upon a "responsibility explicitly committed to the Legislature[,]" *City of Pawtucket v. Sundlun*, 662 A.2d 40, 58 (R.I. 1995), and properly delegated to an administrative agency.  The trial judge apparently recognized this maxim in drawing parameters relative to the issue at hand in this matter.  Courts are charged with applying the law, not making it. *See Conley v. Crown Realty, LLC*, 223 A.3d 768, 772 (R.I. 2020) ("[T]his Court merely applies the law—it does not make it.").

[13] Section 44-1-11 provides:

> "Whenever an erroneous payment or any payment in excess of the correct amount of any tax, excise, fee, penalty, interest, or other charge is made to the tax administrator, the general treasurer shall, after certification by the tax administrator with the approval of the director of administration, refund the erroneous payment or overpayment, or the tax administrator may credit the erroneous payment or overpayment against any tax then or thereafter due, as the circumstances may warrant."

With respect to the TPP tax at issue, "[i]f the tax administrator determines that the corporation has paid a tax in excess of the amount lawfully due, he or she shall allow a refund or permit a credit." Section 44-13-16(a).

"a *direct* interest in the TPP [t]ax and multi-million dollar refund claimed by Verizon." (Emphasis added.) This contention is simply unfounded.

As discussed *infra*, movants argue that their interests are "separate and distinct from the interests of Providence" in that every municipality "has its own unique set of fiscal and budgetary challenges, concerns, and priorities"; according to movants, these interests "come into play in spending TPP [t]ax revenue[], [which] would be affected differently by" a decrease in that revenue. The movants compare their interests in the TPP tax to the intervenors' interests in their real property in *Hickory Ridge Campground*, where there was "special injury of economic loss through property devaluation" to the intervenor-landowners whose properties abutted a proposed campground. *Hickory Ridge Campground, Inc.*, 111 R.I. at 723, 306 A.2d at 828. However, the factual circumstances in that case are vastly different from those in the case at bar. In *Hickory Ridge Campground*, based on well-founded law that abutting property owners who are affected by zoning board decisions have interests that are unique from each other and that are not adequately represented by zoning boards, the Court determined that intervention was warranted where the property owners were not adequately represented by the town solicitor, who failed to appear for a court proceeding and to account for the pending motion to intervene before entering a consent decree. *See id.* at 723-24, 306 A.2d at 828; *see also Caran v. Freda*, 108 R.I. 748, 753, 279 A.2d 405, 408 (1971).

- 17 -

We are of the opinion that movants' interests in ancillary effects, specifically on the expenditure of tax revenue, is indirect and contingent upon both the interpretation of the statute and its effects, if any. *See Hines Road, LLC v. Hall*, 113 A.3d 924, 930 (R.I. 2015) (determining that intervenor's interest was contingent upon an agreement between the parties); *see also Tonetti Enterprises, LLC*, 943 A.2d at 1073 ("An intervenor's interest must bear a 'sufficiently close relationship to the dispute between the original litigants' and the 'interest must be direct, not contingent.'") (quoting *Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39, 42 (1st Cir. 1992)). The proffer of a generalized grievance—common to all municipalities—that movants' fiscal and budgetary concerns are uniquely different from those of Providence, without an adequate explanation as to how those concerns are different in kind or adverse to Providence, is conclusory and insufficient to overcome the underlying presumption. *See Corrente*, 174 A.3d at 1230 (determining that the presumption was overcome by a showing of adverse positions); *see also Groff*, 871 A.2d at 368 (determining that intervenor's interest was different in kind in that she claimed priority over other claimants to the limited funds in a client account); *West Warwick School Committee v. Souliere*, 626 A.2d 1280, 1284 (R.I. 1993) (determining that the motion to intervene was properly denied where "the taxpayers failed to show any actual or concrete wrong beyond a general grievance common to all taxpayers"). This is not

- 18 -

a case where various parties are claiming a competing interest in a limited fund.[14] *See Groff*, 871 A.2d at 368. Rather, Providence's interest in the continuation of TPP tax revenue, in the greatest amount possible, is clearly aligned with that of movants. Although movants' interests in the amount of TPP taxes as compared to Providence may vary, that distinction is governed by statute and has no bearing on this lawsuit. Thus, their interests are sufficiently similar, not competing, and, we conclude, will be adequately represented by Providence's identical litigation goals.

The movants also argue that a settlement between the state and Verizon could result in an order for a refund from movants and cause havoc to their budgets and resident services. This argument is without merit. We are hard-pressed to envision any settlement or order mandating affirmative relief outside the provisions of § 44-1-11. Such a decision would rest with the Legislature. *See* §§ 44-1-4, 44-1-11, 44-13-16. The unrealistic specter of a settlement is insufficiently cognizable to rebut the presumption that Providence adequately represents movants' interests in this controversy. *See T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 40

---

[14] In *Credit Union Central Falls v. Groff*, 871 A.2d 364 (R.I. 2005), we held that the intervenor, a former client of an attorney who purloined funds, was not adequately represented by the Supreme Court's Chief Disciplinary Counsel, who intervened to protect all of the attorney's former clients, because the intervenor alleged a right to the funds superior to that of other former clients. *Groff*, 871 A.2d at 368. Thus, although the interests of the former clients in the funds in the court registry were identical, the intervenor's interest was different in kind in that she claimed priority over the other claimants. *See id.*

(1st Cir. 2020) (determining that concerns of settlement without "specificity or record support" do not demonstrate inadequate representation). The movants presented no authority to demonstrate that a settlement between the state and Verizon could bind a nonparty. Thus, the trial judge did not err by overlooking movants' concerns about a settlement and, more appropriately, focusing on their respective positions.

Furthermore, movants now submit that they "may wish to pursue challenges" to Verizon's depreciation calculation method that the other parties do not raise. Despite their failure to raise this new trial strategy on remand, these concerns are similarly speculative and fail to overcome the presumption of adequate representation. *See Daggett*, 172 F.3d at 112 ("[T]he use of different arguments as a matter of litigation judgment is not inadequate representation *per se*."). To the extent that movants wish to present challenges to Verizon's interpretation of accumulated depreciation, they may do so in an amicus brief. *See id.* (noting that, because statutory intent is not typically proved through trial evidence, and proposed intervenors did not demonstrate otherwise, its arguments were appropriate for an amicus brief and not intervention).

Within the parameters of the issue in this case, the trial judge found that the movants' interests and positions were no different from those of Providence. The movants failed to demonstrate a cognizable difference in their interests as compared

to Providence's interest or to provide an adequate explanation as to how Providence's representation of their interests is lacking. Because Pawtucket and Cranston failed to overcome the presumption of adequate representation, we are of the opinion that the trial judge did not err or abuse his discretion in concluding that the movants failed to demonstrate that their interests were not adequately represented by Providence.

## Conclusion

For the reasons set forth in this opinion, we affirm the order of the District Court. The record in this case may be remanded to the District Court with our decision endorsed thereon.



## STATE OF RHODE ISLAND

### SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Verizon New England Inc. v. Neena S. Savage, in her capacity as Tax Administrator for the State of Rhode Island. |
| **Case Number** | No. 2020-40-M.P. (A.A. 18-187) |
| **Date Opinion Filed** | February 9, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Sixth Division District Court |
| **Judicial Officer from Lower Court** | Associate Judge Christopher K. Smith |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Thomas P. Quinn, Esq.<br>Matthew R. Joyce, Esq.<br>William A. Hazel, Esq*., Pro Hac Vice* |
| | For Defendant:<br><br>Robert K. Taylor, Esq.<br>Frank J. Milos, Jr., Esq. |