**James B. GARDINER**

v.

**Muriel A. GARDINER.**

**Nos. 2002–176–Appeal, 2002–468–M.P.**

Supreme Court of Rhode Island.

April 29, 2003.

Gregory P. Sirbello; Robert E. Flaherty, Warwick, for Plaintiff.

Karen R. Ellsworth, Wakefield; Nancy Oliver, Wickford, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In this case, we consider whether a Family Court justice abused his discretion by denying the motion of the defendant, Muriel A. Gardiner (Muriel), to find the plaintiff, James B. Gardiner (James), in contempt for failing to abide by the terms of two court orders. The orders directed James to specifically perform the terms of a property settlement agreement (agreement), which required him to provide

health insurance for Muriel while he was employed by the State of Rhode Island (state). Muriel appealed from the Family Court's order finding that James was not in contempt. After a prebriefing conference that the parties attended, Muriel filed a petition for writ of certiorari out of concern that she may have improperly appealed from an interlocutory order.[1] This case came before the Court for oral argument on March 3, 2003. After hearing the arguments of counsel, examining the memoranda filed by the parties and reviewing the record, we conclude that the Family Court justice erred by failing to find James in contempt. Therefore, we grant Muriel's petition for certiorari and quash the order of the Family Court. We proceed to the merits of this case by way of Muriel's petition for writ of certiorari because her appeal is interlocutory and therefore, is not properly before us.

## I

### Facts and Travel

James and Muriel divorced on June 22, 1999. The final judgment of divorce incorporated but did not merge the agreement. Paragraph six of the agreement required James to continue providing health insurance to Muriel as required by the Rhode Island Insurance Continuation Act (the act), G.L.1956 chapter 20.4 of title 27, or as long as he remained an employee of the state, whichever came later.[2] In the event

---

1. This Court "will entertain a direct appeal only from a final judgment." *Martino v. Ronci*, 667 A.2d 287, 288 (R.I.1995); *see also* G.L.1956 § 14-1-52(a). Interlocutory orders are reviewable only by way of writ of certiorari. *Pier House Inn, Inc. v. 421 Corp.*, 689 A.2d 1069, 1070 (R.I.1997) (mem.).

2. Paragraph six specifically provides:

"Medical and Dental. [James] shall continue to provide health insurance comparable to his present plan for [Muriel] pursuant to the [act] or as long as [James] works as an employee of the [state] in any capacity; whichever comes last, but in no event past the age of 65 of [James]. [James] and [Muriel] shall each be responsible for their own excess medicals."

of a default, the agreement provided that legal fees could be recovered by the non-defaulting party.[3] In February 2000, Muriel learned that her health insurance coverage had been terminated because James remarried. However, because James was still employed by the state, he still was obligated to provide health insurance pursuant to the agreement. Muriel, therefore, filed an emergency ex parte motion for specific performance. On February 24, 2000, the Family Court justice granted her motion, ordered James to reinstate Muriel's health insurance coverage and scheduled a later hearing with both parties present.

After James failed to restore the coverage, Muriel filed a motion to have him found in contempt, seeking damages and reinstatement of health insurance. On November 1, 2000, the Family Court justice again ordered James to reinstate Muriel's health insurance and scheduled a hearing on contempt for December 6, 2000.[4] On December 2, 2000, James terminated his employment with the state, believing that it would relieve him of any further obligation under the court order to provide health insurance to Muriel.

James failed to appear at the hearing on December 6, 2000. His attorney did, however, send Muriel's attorney a copy of James's resignation letter to his state employer and indicated that because of the resignation he did not need to attend the December 6 hearing. At that hearing, the Family Court justice found James in contempt and ordered him to pay Muriel $5,549.50. That amount represented the aggregate out-of-pocket health insurance premiums Muriel paid because of James's default under the agreement, plus attorney's fees incurred in enforcing the agreement. James objected to the order.

On July 10, 2001, the Family Court justice held a hearing on James's objection, vacated the December 6, 2000 order and directed the parties to submit written briefs discussing the issues of contempt and damages. Finally, on February 22, 2002, the Family Court justice denied Muriel's motion to find James in contempt, reasoning that James was no longer obligated to provide medical insurance coverage pursuant to the agreement. An order reflecting that decision was entered on March 5, 2002. Muriel now seeks relief from this Court.

3. Paragraph seventeen of the agreement specifically provides:

"Legal Fees. In the event that either party shall default in any of the undertakings on his or her part to be performed under the terms of this agreement, and after written notice from the other party, the defaulting party shall not cure such default within the period of ten (10) days after the posting of such notice by regular mail, addressed to the defaulting party at his or her last known address, [James] or [Muriel] may take all steps necessary to enforce the rights conferred upon her or him under the terms of this agreement, and to this end she or he shall have the right to employ counsel at the defaulting party's expense. The defaulting party shall make either direct payments of all reasonable fees and costs of such counsel or shall reimburse [Muriel] or [James] for any such payments made by her or him, provided the party is found to be in default and that any relief which he or she has applied for to this Court or any other Court which has jurisdiction over this agreement and/or the parties is not granted by said Court."

4. The specific performance order required only that James "continue to provide health insurance comparable to his present plan for Muriel pursuant to Paragraph 6 of the [agreement] * * *." The order in no way referred to any damages or costs incurred by Muriel as a result of the loss of insurance coverage or attorney's fees for the prosecution of the motion, both of which were requested in Muriel's emergency ex parte motion for relief.

## II

### Contempt

■ Muriel argues that the Family Court justice erred by failing to adjudge James in civil contempt in his March 2002 order. We agree. A trial justice's "[f]indings of fact in a contempt hearing will not be disturbed unless they are clearly wrong or the trial justice abused his or her discretion." *Durfee v. Ocean State Steel, Inc.*, 636 A.2d 698, 704 (R.I.1994). "[T]he inherent power of courts to punish for contempt of their orders has long been recognized by our jurisprudence." *State v. Price*, 672 A.2d 893, 898 (R.I.1996) (quoting *E.M.B. Associates, Inc. v. Sugarman*, 118 R.I. 105, 108, 372 A.2d 508, 509 (1977)). A finding of civil contempt must be based on a party's lack of substantial compliance with a court order, which is demonstrated by the failure of a party to "employ[ ] the utmost diligence in discharging [its] * * * responsibilities." *Durfee*, 636 A.2d at 704 (quoting *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C.Cir.1975)). While criminal contempt punishes the contemnor for an act insulting or belittling the authority of the court, the purpose of civil contempt is to "coerce the contemnor into compliance with the court order and to compensate the complaining party for losses sustained." *Biron v. Falardeau*, 798 A.2d 379, 382 (R.I. 2002).

At the February 2002 hearing, the Family Court justice found that James was not in contempt because, at that time, he no longer was obligated to provide health insurance to Muriel pursuant to the agreement. Although this finding was accurate with respect to any future duties under the agreement, it patently overlooked James's outright failure to abide by the Family Court's earlier orders to reinstate medical coverage. Although James no longer was bound by the terms of the agreement at the hearing on February 22, 2002, he had been required to provide health insurance coverage to Muriel until December 2, 2000, the date he left state employment. The record reveals that at no time did James ever attempt to comply with either of the two Family Court orders to reinstate health insurance coverage. Thus, James was in contempt of those orders for approximately ten months before terminating his state employment. It is apparent that James's complete disregard of the orders during that period constituted a willful violation. Accordingly, the Family Court justice abused his discretion when he vacated the December 6 order and when he overlooked James's conscious and inexcusable noncompliance.

## III

### Damages

■ "Once willful disobedience of an order of the court is shown, * * * it is within the discretion of the court to impose sanctions for contempt." *E.M.B. Associates, Inc.*, 118 R.I. at 109, 372 A.2d at 509–10. Because we now determine that the Family Court justice erred in failing to find James in contempt, it is incumbent upon this Court to impose an appropriate sanction. This Court, " 'under its supervisory and revisory powers has the authority to fashion remedies' * * * that will 'serve the ends of justice' and end the controversy." *Capital Properties, Inc. v. State*, 749 A.2d 1069, 1074 (R.I.1999). We conclude that the sanction imposed by the Family Court justice when he originally found James in contempt adequately serves the ends of justice in this case. Accordingly, we reinstate the December 6, 2000 award of $5,549.50 for Muriel's health insurance expenses as well as her attorney's fees.

### Conclusion

For the foregoing reasons, Muriel's petition for certiorari is granted and the order

of the Family Court is quashed. We hereby reinstate the Family Court's December 6, 2000 order requiring James to pay insurance premiums and attorney's fees to Muriel in the amount of $5,549.50. The papers of the case may be returned to the Family Court with our decision duly endorsed thereon.