NOW COURIER, LLC

v.

BETTER CARRIER CORP. et al.

No. 2008–13–Appeal.

Supreme Court of Rhode Island.

March 6, 2009.

Justin T. Shay, Esq., for Plaintiff.

Harris Weiner, Esq., Providence, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Chief Justice WILLIAMS (ret.), for the Court.

The defendants, Dean S. Cambio and Better Carrier Corporation (collectively defendants), appeal from a Superior Court judgment finding the defendants in contempt of a consent order and imposing upon them attorney's fees and expenses. This case came before the Supreme Court for oral argument on February 2, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

Dean S. Cambio formerly was employed as a vice president of Now Courier, LLC (plaintiff), and its parent company, Current Carrier, both of which provide trucking and delivery services. A noncompetition agreement existed between Mr. Cambio and plaintiff, that was in effect when Mr. Cambio left plaintiff's employ in 2005. Thereafter, Mr. Cambio started his own trucking and delivery company, known as Better Carrier Corporation. Believing that defendants had violated the noncompetition agreement, plaintiff filed the instant action on October 31, 2005.

After negotiations, the parties executed a consent order on December 23, 2005, which was entered by the Superior Court on January 3, 2006. The order required defendants not to compete with plaintiff or solicit its customers from the date of the order until July 17, 2007. The consent order precluded defendants from competing with plaintiff in three specified transportation areas: (1) small parcel/package [1] carriage in Rhode Island and Massachusetts; (2) pre-scheduled/routed deliveries of small parcels/packages in Rhode Island and Massachusetts; and (3) deliveries in Rhode Island and Massachusetts of items that could fit in a passenger vehicle without the use of handling equipment. In

---

1. The consent order defines a "small parcel/package" as "a shipment in a passenger vehicle without the use of handling equipment."

addition to the noncompete provisions, the consent order also precluded defendants from soliciting plaintiff's customers, specifically those who were plaintiff's customers from January 1, 2004, through October 1, 2005, as well as healthcare customers listed in an exhibit attached to the consent order until July 17, 2007. Additionally, the consent order provided that a statement signed under oath by a customer, stating that it had not been solicited by defendants, but independently had contacted defendants or was not a customer of plaintiff between January 1, 2004, and October 1, 2005, "shall be *prima facie* evidence of the facts set forth in the statement." Finally, the consent order also provided a default provision, which provided that if a default occurred, the defaulting party could "cure" its default within ten days.

Shortly after the consent order was executed, but before it was entered by the Superior Court, plaintiff learned that Wade Berard, acting on behalf of defendant Better Carrier, had attempted to solicit one of plaintiff's customers, Maloney's Oil, for Better Carrier. In a deposition on January 20, 2006, Mr. Berard confirmed this information and also noted that he had presented Earl Maloney of Maloney's Oil with a nonsolicitation form. The form, designed to demonstrate that it was Maloney's, and not defendants, who had made the first contact, never was signed by an agent of Maloney's Oil. Mr. Berard also testified that he did not approach Maloney's Oil at the direction of defendant Cambio and was, in fact, reprimanded by the latter for having done so.

Having learned of Mr. Berard's solicitation of one of its customer's, plaintiff's counsel demanded that defendants cease such activities and invoked the default provision of the consent order. However, suspecting defendants of continued violations,

plaintiff sought to depose Mr. Cambio on May 2, 2006. In response, Mr. Cambio filed a motion for a protective order seeking to prevent his deposition. The Superior Court denied this motion (May 2, 2006) and additionally ordered plaintiff to file an affidavit setting forth evidence of defendants' alleged contacts with plaintiff's customers.

On April 27, 2006, plaintiff presented to the Superior Court an affidavit signed by Christopher Halkyard, plaintiff's president. Mr. Halkyard stated that he had learned from an anonymous letter that Mr. Cambio had contacted one of plaintiff's customers, UPS Logistics, and that he later learned the same from a UPS Logistics employee. Further, Mr. Halkyard attested that an official from another of plaintiff's customers, Graybar Electric, informed him that Mr. Cambio himself had solicited business from them. Additionally, on May 18, 2006, plaintiff filed a supplemental affidavit, again signed by Mr. Halkyard, in which he stated that an employee of another of plaintiff's customers, New England Precision Grinding, informed him that two agents of Better Carrier had solicited business from him.

Meantime, defendants continued to resist Mr. Cambio's scheduled deposition and filed a second motion for a protective order, which the Superior Court denied on May 30, 2006. The plaintiffs served upon Mr. Cambio a subpoena *duces tecum* ordering his appearance at a deposition on June 15, 2006. Two days before the deposition was to be held, however, defendants filed a petition for a writ of certiorari with this Court, again seeking a protective order halting Mr. Cambio's deposition. This Court denied defendants' request and ordered that the deposition be held as scheduled. Mr. Cambio indeed appeared for his deposition but failed to bring certain documents requested under the subpoena and

refused to answer certain questions about plaintiff's customers.

As the summer of 2006 continued, plaintiff learned that defendants allegedly had solicited two more of plaintiff's customers: A.H. Harris and Lifespan. Mr. Cambio also allegedly had provided A.H. Harris with a nonsolicitation form. As for Lifespan, a healthcare customer specifically mentioned in the consent order, plaintiff believed that defendants had arranged to provide trucking services through a third-party company, Network Delivery, with the aid of one of defendants' employees. Later, on July 21, 2006, plaintiff filed a motion to adjudge defendants in contempt for Mr. Cambio's refusal to answer certain deposition questions. On August 25, 2006, the Superior Court ordered the resumption of Mr. Cambio's deposition.

In the last three months of 2006, plaintiff conducted depositions of employees of its customers, Graybar and A.H. Harris, that defendants allegedly had solicited. The deponents testified that defendants indeed did solicit them to do business and, in the case of A.H. Harris, defendants insisted on execution of a nonsolicitation form. In addition, plaintiff deposed an employee from Network Delivery, who testified that he believed someone in one of defendants' trucks had helped him with a Lifespan delivery.

Thereafter, on February 2, 2007, plaintiff filed with the Superior Court a supplemental motion to adjudge defendants in contempt and to impose sanctions. The plaintiff asserted that defendants willfully had violated the consent order by soliciting its customers, and by fraudulently using nonsolicitation documents; improperly had used a third-party carrier to provide services to Lifespan; and had obstructed the discovery process, citing Mr. Cambio's lack of candor at his deposition.

The Superior Court heard plaintiff's motion on March 23, 26, and 27, 2007. In addition to receiving deposition testimony into evidence, the hearing justice also listened to the testimony of three witnesses: Mr. Cambio, Mr. Halkyard, and Joseph Clark, a constable.

At the hearing, Mr. Cambio largely denied plaintiff's allegations and asserted that what actions he took complied with the consent order. By contrast, Mr. Halkyard testified to various, specific instances of what he asserted were defendants' solicitations of plaintiff's customers.

The hearing justice issued a bench decision on May 15, 2007, judging defendants in contempt of the consent order. Finding Mr. Cambio's testimony to be wholly lacking in credibility, the hearing justice concluded that the actions of defendants constituted the "most egregious case of contempt of a consent order" he had ever seen. Accordingly, the hearing justice ordered that the consent order's terms be extended an additional seven months—until February 17, 2008—and awarded plaintiff fees and costs incurred in the prosecution of its motion to adjudge defendants in contempt. In a supplemental hearing on June 13, 2007, the hearing justice awarded plaintiff $53,180.52 in attorney's fees and expenses incurred in prosecuting its motion to adjudge defendants in contempt. Final judgment was entered on August 3, 2007. The defendants filed a timely notice of appeal.

## II

### Analysis

On appeal, defendants argue that the hearing justice's decision failed to reflect sufficient findings of fact to support his conclusion of defendants' contempt, overlooked material evidence, relied upon inadmissible evidence, and included a motion

for discovery sanctions not properly before the court. Secondly, defendants aver that the hearing justice failed to apply key provisions of the consent order. Lastly, defendants argue that the sanctions imposed upon them were in excess of the court's authority and therefore constituted an abuse of discretion.

## A

### Standard of Review

The authority to find a party in civil contempt is among the inherent powers of our courts. *Gardiner v. Gardiner*, 821 A.2d 229, 232 (R.I.2003). Its purpose is to "coerce the contemnor into compliance with the court order and to compensate the complaining party for losses sustained." *Id.* (quoting *Biron v. Falardeau*, 798 A.2d 379, 382 (R.I.2002)). The establishment of civil contempt requires that clear and convincing evidence demonstrate that an order of the court, sufficiently specific in its directive to the parties, has been violated. *State v. Lead Industries Association*, 951 A.2d 428, 464 (R.I.2008); *Trahan v. Trahan*, 455 A.2d 1307, 1311 (R.I. 1983). A hearing justice's "[f]indings of fact in a contempt hearing will not be disturbed unless they are clearly wrong or the trial justice abused his or her discretion." *Gardiner*, 821 A.2d at 232 (quoting *Durfee v. Ocean State Steel, Inc.*, 636 A.2d 698, 704 (R.I.1994)). Nor will we substitute our reading of the evidence for that of the trial justice if the record supports the hearing justice's findings. *Notarantonio v. Notarantonio*, 941 A.2d 138, 144 (R.I. 2008).

A hearing justice must make findings of fact sufficient for this Court "to pass upon the appropriateness of the order and the grounds upon which it rests." *Chiaradio v. Falck*, 794 A.2d 494, 496 (R.I. 2002). However, the hearing justice need not " 'categorically accept or reject each piece of evidence' " or resolve "every disputed factual contention." *Notarantonio*, 941 A.2d at 147 (quoting *Narragansett Electric Co. v. Carbone*, 898 A.2d 87, 102 (R.I.2006)). Indeed, sufficient findings can be implicit in his decision. *Id.* Even "brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case," *Broadley v. State*, 939 A.2d 1016, 1021 (R.I.2008) (quoting *Donnelly v. Cowsill*, 716 A.2d 742, 747 (R.I.1998)), and "if the decision reasonably indicates that [he] exercised [his] independent judgment in passing on the weight of the testimony and the credibility of the witnesses it will not be disturbed on appeal unless it is clearly wrong or otherwise incorrect as a matter of law." *Notarantonio*, 941 A.2d at 144–45 (quoting *McBurney v. Roszkowski*, 875 A.2d 428, 436 (R.I.2005)).

## B

### The Judgment of Contempt

### 1

The defendants assert that the hearing justice made insufficient findings of fact to support his judgment of contempt; overlooked relevant deposition testimony; improperly admitted the affidavit of Christopher Halkyard, which they assert was based on hearsay; and improperly ruled on a motion for discovery sanctions that was not before the court. We disagree.

Here, the hearing justice's articulated findings of fact and conclusions of law are sufficient for this Court to conduct a meaningful review. First, the hearing justice determined that the testimony of Mr. Cambio was "totally lacking in credibility"; that determination implicitly left plaintiff's material evidence to the contrary unchallenged. Further, although he did not sanction defendants for their alleged

violation of the consent order that purportedly occurred *before* it was entered by the court, the hearing justice specifically held that such evidence was probative of a "pattern and a course of conduct by [d]efendants and their agents which commenced even before the ink on the consent order was dry * * *." In addition, the hearing justice specifically noted that he had accepted as credible facts defendants' numerous efforts to solicit plaintiff's customers, their attempt to "camouflage" their pursuit of business with Lifespan, and their fraudulent use of nonsolicitation forms. Implicitly, the hearing justice found that deposition testimony submitted on behalf of plaintiff was credible. The hearing justice's findings, therefore, noted sufficiently the reliable evidence extant in the record. *See Chiaradio,* 794 A.2d at 496.

Furthermore, defendants aver that the hearing justice erroneously failed to reference aspects of the admitted deposition testimony that, they argue, exculpate them from wrongdoing. As mentioned, however, a judge sitting as a finder of fact need not "categorically accept or reject each piece of evidence." *Notarantonio,* 941 A.2d at 147 (quoting *Narragansett Electric Co.,* 898 A.2d at 102). The decision rendered by the hearing justice implies that he found as reliable the evidence pointing toward defendants' contravention of the consent order. We therefore cannot hold that the hearing justice's credibility determinations and weighing of the evidence were clearly wrong based on the evidence in the whole record. *See Gardiner,* 821 A.2d at 232.

The defendants also contend that the affidavit of plaintiff's president, Mr. Halkyard, which detailed information about defendants' attempts at solicitation that he had learned from plaintiff's customers, consisted largely of inadmissible hearsay. We previously have held, however, that the admission of hearsay is harmless when the record demonstrates that it is merely cumulative of proper evidence. *In re Andrey G.,* 796 A.2d 452, 457 (R.I. 2002). Here, the facts alleged in Mr. Halkyard's affidavit were buttressed and corroborated by his testimony at the hearing and the depositions of plaintiff's customers that already had been entered into evidence. Any inconsistencies in the proffered evidence were resolved by the hearing justice in his discretion.

Finally, defendants assert that the hearing justice's decision was based, at least in part, on a motion for discovery sanctions that was not before the court. In his decision, the hearing justice noted "the disregard demonstrated by [d]efendants' failure to properly comply with and to obstruct the ordinary discovery processes," but such was not central to his holding. We are satisfied that ample evidence exists in the record for the hearing justice to reasonably have found that a judgment of contempt was warranted based on defendants' actions concerning the consent order.

**2**

The defendants assert the hearing justice erred when he refused to apply the default resolution of the consent order, which allows a defaulting party to cure a breach of the consent order within ten days. We have held that a consent order, although it "receives a court's imprimatur," is "in essence a contract" and therefore must "be construed as a contract using the rules of construction applicable thereto." *Trahan,* 455 A.2d at 1310. Accordingly, as with all contracts, it is well settled that there is an "implied covenant of good faith and fair dealing between parties * * * so that the contractual objectives may be achieved." *Ide Farm & Sta-*

*ble, Inc. v. Cardi,* 110 R.I. 735, 739, 297 A.2d 643, 645 (1972). Having found that defendants repeatedly and willfully violated the terms of the consent order, the hearing justice held that to allow defendants the refuge of the default provision would "make a mockery of the judicial process and the sanctity of Court orders." We agree.

The defendants also argue that the hearing justice failed to distinguish between "large parcel freight" and "small package licensure" as delineated in the noncompetition section of the consent order. Indeed, the consent order precludes defendants from competing with plaintiff only in regards to "small/parcel package" carriage; however, the nonsolicitation section of the consent order does not provide such a distinction: it clearly bars defendants from soliciting plaintiff's customers for a specified time period. It was because of defendants' *solicitation* of plaintiff's customers that the hearing justice found defendants in contempt; thus, the distinction between the types of freight carriage found in the *noncompetition* section is of no relevance.

## C

### Sanctions

The defendants also take issue with the amount of attorney's fees and expenses awarded to plaintiff, arguing that the hearing justice's decision did not adequately indicate which particular violation of the order had triggered the award.[2]

When a court determines that a party willfully disobeyed a court order, it

is within the hearing justice's discretion to sanction, by an award of attorney's fees, the party found to be in contempt. *Africano v. Castelli,* 837 A.2d 721, 729 (R.I.2003); *Gardiner,* 821 A.2d at 232. This award, however, must be "reasonably related to the extent and willfulness of the contempt." *Africano,* 837 A.2d at 729 (quoting *Moran v. Rhode Island Brotherhood of Correctional Officers,* 506 A.2d 542, 544 (R.I.1986)).

After finding the defendants in willful contempt, the hearing justice stated clearly that he would award the plaintiff costs and fees incurred in prosecuting its motion for contempt. The award reasonably was related to the hearing justice's finding of contempt. The hearing justice calculated it by subtracting a severance payment plaintiff owed to defendant Cambio from the total fees and expenses that plaintiff incurred in prosecuting its motion. The hearing justice considered the affidavits and accountings presented by the plaintiffs and, after hearing the defendants' objections and making appropriate deductions, determined that $53,180.52 was a reasonable award. Such an award will not be disturbed by this Court.

### Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court. The defendants' appeal is dismissed and the record is remanded to the Superior Court.

Justice SUTTELL did not participate.

---

**2.** The defendants also contend that the hearing justice exceeded his authority when he extended the terms of the consent order for an additional seven months—until February 17, 2008. We hold that because the period of extension now has long passed, a ruling on

this issue would have no practical effect on the present controversy. *See City of Cranston v. Rhode Island Laborers' District Council Local 1033,* 960 A.2d 529, 533 (R.I.2008). The issue therefore is moot, and we decline to opine on the matter. *See id.*