July 1, 2022

**Supreme Court**

No. 2020-234-Appeal.
No. 2020-247-Appeal.
(NC 17-493)

Charles A. Anton et al.          :

          v.          :

Philippe L. Houze et al.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2020-234-Appeal.
No. 2020-247-Appeal.
(NC 17-493)

Charles A. Anton et al.               :

v.                                    :

Philippe L. Houze et al.              :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Long, for the Court.**  This case came before the Supreme Court on cross-appeals from a final judgment of the Superior Court that granted declaratory and injunctive relief in favor of the plaintiffs, Charles A. Anton and Tami D. Anton, as Trustees of the Victoria Avenue Realty Trust (plaintiffs or the Antons), and denied declaratory and injunctive relief requested in the counterclaim filed by the defendants, Philippe L. Houze and Marie Houze (defendants or the Houzes).  In their appeal, the defendants contend that the trial justice erred in (1) deciding that a two-member condominium board consisting of the owners of the condominium's two units is not inconsistent with the Rhode Island Condominium Act, G.L. 1956 chapter 36.1 of title 34 (the act); (2) holding Mr. Houze in civil contempt; and (3) awarding

the plaintiffs attorneys' fees.  In their cross-appeal, the plaintiffs assert that the trial justice erred when he decided that § 34-36.1-2.17(b) did not bar the defendants' counterclaims as untimely.

For the reasons stated herein, we affirm the judgment of the Superior Court.

## Facts and Procedural History

The acrimony between plaintiffs and defendants centers on the governance of two condominium units located at 9 and 9A Victoria Avenue in Newport, Rhode Island.  The facts concerning the events that led to litigation are undisputed.

In 1990 Richard D. Stengel, DMD and JoAnn R. Stengel (the Stengels) built an addition to their single-family home located on Victoria Avenue in Newport for Dr. Stengel's father, Charles D. Stengel (Mr. Stengel).  The Stengels, as declarants, then converted the Victoria Avenue property into a two-unit condominium, D & J Condominium (the condominium), managed by D & J Condominium Association (the association).  The Stengels designated the addition as Unit 9A and conveyed it to Mr. Stengel, and they continued to live in Unit 9.  Units 9 and 9A share one adjoining wall but are otherwise separate units.

As part of the conversion of the property to a condominium, the Stengels' attorney drafted the D & J Declaration of Condominium, dated August 10, 1990 (the declaration), and By-Laws of the D & J Condominium (the by-laws).

Pertinent to this dispute, the declaration and the by-laws specified the following. Unit 9 and Unit 9A had 67 percent and 33 percent, respectively, of the allocated interest in the condominium common elements, expenses, and profits. A board of directors (the board) consisted of two people who would be elected according to the by-laws. Unit owners would elect the board according to their allocated interests. Importantly, once the board was established, the by-laws provided, "[n]o Unit Owner shall make any structural addition, alteration, or improvement in or to his Unit, or the Common Elements, without the prior written consent thereto of the Board of Directors."

The declaration also required 67 percent of unit-owner consent to amend the declaration; however, any amendment contrary to the act was prohibited. The declaration further provided that all disputes regarding the operation of the condominium that could not be resolved by agreement of the unit owners would be submitted to arbitration. Any unit owner or person who violated the declaration or by-laws would be liable for all court costs and reasonable attorneys' fees incurred by the association, the board, the managing agent, and other unit owner, according to the declaration.

After living in Unit 9A for several years, Mr. Stengel transferred ownership of Unit 9A back to the Stengels. In 2005 the Stengels rented Unit 9A to the Antons, who soon thereafter expressed an interest in purchasing Unit 9A. However, before

purchasing Unit 9A, the Antons discussed with the Stengels their concerns regarding governance of the condominium. The Antons wanted to ensure that, if they became owners of Unit 9A, they would have the same decision-making authority as Mrs. Stengel, who was at that time the sole owner of Unit 9, and any future owners of Unit 9. The Stengels and the Antons came to an agreement: As a condition of the Antons' purchase of Unit 9A, the Stengels would amend the declaration to give the Antons, as owners of Unit 9A, authority in managing the condominium equal to that of the owner of Unit 9.

On March 24, 2006, the Stengels, who at that time comprised 100 percent of the votes of the association, the board, and unit owners, executed the First Amendment to D & J Condominium Declaration of Condominium (the first amendment) and recorded it four days later in the City of Newport Land Evidence Records. The Antons then completed their purchase of Unit 9A. The first amendment revised multiple sections of the declaration, including the definition of "Board of Directors" and provisions relating to the rights of unit owners concerning various condominium governance matters.

More specifically, the first amendment modified the language of the definition of "Board of Directors" in Section 1.5 of the declaration to provide as follows:

> "'Board of Directors' means those persons who are the owners of Units 9 and 9A and who shall also be the Executive Board of the Association. Notwithstanding any other provision in this Declaration, Rules and Regulations

- 4 -

and the By-Laws to the contrary (including without limitation Section 3.2 of the By-Laws), the Board of Directors and Executive Board of the Association shall at all times be comprised of those persons who are the owners of Units 9 and 9A[.]"

The first amendment also revised the language of the provision requiring consent from unit owners to alter various aspects of the condominium. The relevant portion of the modified Section 8.1 of the declaration states:

"In addition to all other requirements of this Declaration or the By-Laws, the prior written consent of First Mortgagees holding mortgages on Units entitled to at least fifty-one (51%) percent of the Common Areas and Facilities, and Unit Owners entitled to one hundred (100%) percent of the Common Areas and Facilities of the Condominium shall be required for the following:

"* * *

"* * * any additions, alterations, or improvements to the Common Elements costing in excess of One Thousand ($1,000.00) Dollars."

It is the Antons' contention that these revisions designated that the two-member board comprises one person from each unit, each with equal voting rights, and that many condominium governance and approval issues require 100 percent of the board's consent.

Ultimately, the Stengels listed Unit 9 for sale, and in December 2016 the Stengels and the Houzes entered into a purchase and sale agreement for Unit 9; the parties closed on the sale in May 2017.

- 5 -

Prior to the closing, on December 30, 2016, the Antons had contacted the Stengels' broker to verify that the Houzes, as potential buyers of Unit 9, were familiar with the various condominium documents and understood that unanimous unit-owner approval was required to alter aspects of the common elements and the exterior of any unit of the condominium. Thereafter, but also prior to the closing, the Antons met with the Houzes in February 2017 to discuss the Houzes' plans to renovate the interior and exterior of Unit 9. During that meeting, Mr. Anton explained to the Houzes that the renovations would require the Antons' approval because the Houzes wanted to modify structural elements, the exterior, and common elements of the condominium. Further, Mr. Anton instructed his attorney to contact Mr. Houze's attorney to bring this issue to Mr. Houze's attention.

After the closing, Mr. Anton again directed his attorney to send the Houzes' attorney a letter regarding the management of the condominium. Mrs. Anton also personally reached out to Mr. Houze regarding his planned renovation. Throughout these communications and the pendency of this litigation, Mr. Houze maintained that he had unilateral decision-making power because, he later testified, based on his "line by line" reading of the declaration and the by-laws, he believed that he had a majority of the board votes accorded by his 67 percent of the allocated interest.

Thereafter, Mr. Houze began interior renovations to Unit 9. To do so, he received a permit from the City of Newport by representing that he was renovating

a single-family home. However, the building inspector required Mr. Houze to receive consent from the board for modifications to the external elements. Mr. Houze then presented the Antons with a list of renovations for approval, which the Antons refused to authorize without first viewing blueprint plans of the proposed modifications. Despite the Antons' failure to provide the requested approval, Mr. Houze implied in his communications with a clerk of the office of the city building inspector that he had consent for the renovations as the majority vote of the board. Consequently, Mr. Houze received permitting for the construction. The building inspector later voided the permit, however, explaining that the clerk had issued it after receiving misleading information. As a result of Mr. Houze's actions, the Antons initiated the instant action in Newport County Superior Court.

The Antons alleged in their verified complaint that the Houzes had commenced construction without unanimous approval by the board, in violation of the condominium's governing documents; towed a vehicle belonging to the Antons' guest that was mistakenly parked on the Houzes' driveway; applied tape to the Antons' window to obstruct the view of a security camera inside the Antons' unit; and erected a nine-foot-high "spite fence" in front of the Antons' window, which the Houzes refused to move. The Antons sought declaratory relief as to the rights and responsibilities of the parties as set forth in the condominium's governing documents; the member composition of the board and voting rights; the definition

- 7 -

of "unit" according to the declaration and by-laws; whether unit owners must receive board approval before modifying the external elements, common elements, and structural elements of a unit; and whether the Houzes' renovations violated the declaration. The Antons also sought injunctions to require the Houzes to remove the "spite fence" and to prohibit the Houzes' unilateral modification of the external and structural elements of Unit 9 and the common elements of the condominium. Lastly, the Antons asked the court to award compensatory and punitive damages, as well as attorneys' fees and costs, for the Houzes' violation of the condominium's governing documents.

The Houzes counterclaimed, alleging that the Antons' interpretation of the term "Board of Directors" contravened the plain language of the act and further that the first amendment violated the act. The Houzes sought declaratory relief regarding the validity of the first amendment; the composition of the board and its voting allotment; and the definition of "unit" as used in the condominium's governing documents. The Houzes also requested an award of attorneys' fees and costs, as well as compensatory and punitive damages, and an injunction prohibiting the Antons from surveilling the Houzes and their unit by video recording.

In December 2017 the trial justice granted the Antons' request for a temporary restraining order (the TRO), which he renewed until such time that the court rendered a decision on the merits of the case. The TRO prohibited the Houzes from

changing the external elements of Unit 9 or the common elements of the condominium; it also enjoined the Houzes from making unilateral decisions regarding landscaping and the common elements without written approval from the board or approval of 100 percent of the unit owners.

The trial justice presided over a four-day nonjury trial in October 2018. During the trial, the Antons and the Houzes each presented testimony by an attorney qualified as an expert to give an opinion on the declaration, its interpretation, and the applicability of relevant law. Attorney Frank Lombardi testified for the Houzes.

One month prior to the start of trial, but after the issuance of the TRO, the Houzes had contacted the Antons requesting their consent to remove a beech tree branch that was at risk of falling onto Unit 9. After much communication, the Antons agreed to the removal of only that branch.

However, after completion of the landscaping work, in December 2018, the Antons discovered that a row of holly bushes and a crabapple tree had also been removed from the property. The Antons therefore filed a motion to adjudge Mr. Houze in civil contempt of the TRO for the removal of the greenery without the Antons' consent.

At the contempt hearing, held in February 2019, Mrs. Anton testified that she noticed the removal of the holly bushes and crabapple tree when she visited the property a few weeks after their removal. Mrs. Anton testified that she had approved

the hiring of Bartlett Tree Experts (Bartlett) for the removal of the branch because Bartlett had previously performed work on the property. However, an e-mail from Bartlett to Mrs. Anton and Mr. Houze indicated that Bartlett would require payment in advance for any services, due to the ongoing dispute between the two parties.

Mr. Houze also testified at the contempt hearing about his actions with respect to the removal of the greenery on the property. Mr. Houze explained that, in addition to the estimate from Bartlett, he had received two separate estimates from North-Eastern Tree Service, Inc. (North-Eastern): the first for removal of the beech tree branch only, and the second for maintenance of cypress trees and the removal of the holly bushes and the crabapple tree. Mr. Houze stated that, despite the discussion with the Antons wherein they approved the removal of the beech tree branch by Bartlett, he chose to work with North-Eastern because Bartlett had requested payment in advance.

Mr. Houze recounted that he was present on the property when North-Eastern began the landscaping work, but that he left prior to its completion due to a work commitment in Boston. Mr. Houze testified that he returned the next day and was surprised to find that North-Eastern had removed the holly bushes and crabapple tree, in addition to the beech tree branch. According to Mr. Houze, the removal of the additional foliage was North-Eastern's mistake; he testified that the company erroneously thought he had authorized the landscaping work according to both

estimates, not just the first, for the beech tree branch only. Mr. Houze acknowledged in his testimony at the hearing that he had not notified the Antons of the mistake.

In an oral ruling on the contempt motion on October 3, 2019, the trial justice held Mr. Houze in civil contempt and awarded the Antons attorneys' fees related to the contempt matter. The trial justice found that the Antons had proven by clear and convincing evidence that Mr. Houze intentionally failed to comply with the TRO. He found that Barlett's request for payment in advance was to ensure that the parties had reached an agreement before work started, whereas there was no evidence that North-Eastern was aware of the parties' contentious relationship. The trial justice further found that Mr. Houze's actions in removing the holly bushes and crabapple tree were consistent with the very belief held by Mr. Houze that had sparked the parties' dispute. According to the trial justice, Mr. Houze believed that he could unilaterally authorize modifications to the common elements of the condominium. The trial justice also found that Mr. Houze's testimony that North-Eastern removed the additional foliage by mistake was not credible, because Mr. Houze took no corrective action after the removal, and he did not notify plaintiffs of the purported mistake.

That same day, the trial justice also issued an exhaustive and lengthy written decision on the merits of the case, granting the Antons' requests for declaratory and injunctive relief. The trial justice determined that the statute of limitations did not

bar consideration of the Houzes' counterclaims, but nevertheless concluded that the challenged first amendment was not inconsistent with the act. Accordingly, he found that Mr. Houze was required, but failed, to get approval from the Antons for the renovations to the external and structural elements of Unit 9 and the modifications to common elements.

The trial justice awarded reasonable attorneys' fees and costs to the Antons, pursuant to both § 34-36.1-4.17 and the attorneys' fees provision of the declaration. He found Mr. Houze's behavior throughout the pendency of the ligation to be "unreasonabl[e] with respect to his obligations to the Condominium and to the Antons as fellow Unit Owners" by attempting to unilaterally control the condominium on numerous occasions; he also found that "Mr. Houze's actions were deliberately combative and confrontational" prior to the Houzes' purchase of Unit 9, and that those actions continued after trial.

In his decision, the trial justice gave numerous examples of Mr. Houze's conduct, such as the construction of a "spite fence" in front of Unit 9A; his refusal to provide the Antons with plans of his proposed renovations; the manner in which he presented his application for a permit to the clerk of the city building inspector; and his defiance of the TRO by causing the removal of the holly bushes and crabapple tree. After an accounting of attorneys' fees, the trial justice ultimately

ordered the Houzes to pay $230,121.15 in fees to the Antons, as explained in a written decision issued on March 27, 2020.

Judgment entered on April 20, 2020, granting plaintiffs' requested relief and denying defendants' requested relief, consistent with the trial justice's written decisions and subsequent order encapsulating those decisions. The Houzes timely appealed, and the Antons filed a timely cross-appeal.

### Issues Presented

Before this Court, the Houzes contend that the trial justice erred in deciding that the first amendment's designation of the unit owners as the two members of the condominium board does not contravene the act. Further, according to the Houzes, the trial justice (1) erroneously limited Attorney Lombardi's testimony on that issue and (2) wrongly required the Houzes to seek consent from the Antons for renovations to Unit 9. The Houzes also contend that the trial justice erred in holding Mr. Houze in contempt and awarding the Antons attorneys' fees.

In their cross-appeal, the Antons assert that the trial justice erred in concluding that the Houzes' challenge to the validity of the first amendment to the declaration was not time-barred pursuant to § 34-36.1-2.17(b). Because of the potentially dispositive nature of the statute-of-limitations issue raised in the Antons' cross-appeal, we first consider whether the Houzes' request for declaratory relief, as stated in their counterclaim filed on March 22, 2018, was untimely.

## Statute of Limitations

Although we review a trial justice's decision to grant or deny declaratory relief with deference, we apply a *de novo* standard of review to the trial justice's conclusions on questions of law. *E.g.*, *Tiernan v. Magaziner*, 270 A.3d 25, 30 (R.I. 2022). It is settled that "whether a statute of limitations has run against a [party's] claim is * * * a question of law." *Balletta v. McHale*, 823 A.2d 292, 294 (R.I. 2003) (quoting *Hall v. Insurance Company of North America*, 727 A.2d 667, 669-70 (R.I. 1999)). Additionally, our review of questions of statutory interpretation is *de novo*. *E.g.*, *Goddard v. APG Security-RI, LLC*, 134 A.3d 173, 175 (R.I. 2016).

Section 34-36.1-2.17(b) provides that "[n]o action to challenge the validity of an amendment adopted by the association pursuant to this section may be brought more than one year after the amendment is recorded." Neither party in this case has challenged the meaning of § 34-36.1-2.17(b). Thus, we apply the statute as written to the facts of this case.

The Stengels undisputedly adopted the first amendment in March 2006 in compliance with the two applicable requirements of § 34-36.1-2.17: First, 100 percent of the unit owners agreed to the amendment, more than the 67 percent mandated by both § 34-36.1-2.17(a) and the declaration; and second, the first amendment was recorded in Newport, the municipality in which the condominium is located, as prescribed by § 34-36.1-2.17(c). Accordingly, § 34-36.1-2.17(b)

- 14 -

authorized a challenge to the validity of the first amendment until March 28, 2007, one year after the first amendment was recorded in the land evidence records. The Houzes' challenge to the first amendment, more than ten years later, is plainly untimely under the act.

Nevertheless, the Houzes argue that the first amendment is void *ab initio* and therefore not subject to the limitations period set forth in § 34-36.1-2.17(b), because, they assert, the first amendment conflicts with § 34-36.1-3.03(f), and such a conflict is prohibited by the act and by the declaration. Specifically, the Houzes allege that the first amendment's designation of the board as being composed of one unit owner from each unit violates the requirement in § 34-36.1-3.03(f) that a three-member board be elected. They analogize the facts of the present case to those in *America Condominium Association, Inc. v. IDC, Inc.*, 844 A.2d 117 (R.I. 2004), contending that the first amendment reduced the Houzes' voting rights, in contravention of the "consumer protection aspect" of the act as set forth in that case. *See IDC, Inc.*, 844 A.2d at 130.

In *IDC, Inc.*, the defendant-developer contested the trial justice's determination that certain amendments to the condominium declaration in that case, which increased special declarant rights, were invalid because they were not unanimously approved by all unit owners as required by § 34-36.1-2.17(d). *IDC, Inc.*, 844 A.2d at 125, 128-29. The defendant-developer contended that all unit

owners had unanimously consented because representatives of the individual unit owners had voted in favor of the amendments. *Id.* at 128. We disagreed, holding that the voting scheme used to increase special declarant rights was inconsistent with the act. *Id.* at 130. We recognized the "strong consumer protection aspect" of § 34-36.1-2.17(d), explaining that the unanimity requirement protects unit owners from "amendments favoring the declarant made without their consent." *Id.* We concluded that the amendments were therefore void *ab initio*; consequently, we deemed the statute of limitations inapplicable. *Id.* at 133.

Despite the Houzes' urging, *IDC, Inc.* does not control our analysis of the timeliness of the Houzes' challenge to the validity of the first amendment. We discern no offense to law or public policy that would render the first amendment void *ab initio*. The Houzes receive no comfort from the "consumer protection aspect" of the act with respect to § 34-36.1-3.03(f), which applies to the period of declarant control, if any, of a condominium association. *See* § 34-36.1-3.03(d). In March 2006, when the first amendment was adopted, the Houzes were not unit owners and, consequently, had no rights related to the condominium. *See IDC, Inc.*, 844 A.2d at 130. Any rights relating to the condominium that the Houzes have date to May 2017, when they closed on the purchase of Unit 9, and which was well beyond the period of the Stengels' initial control of the association as declarants. After the closing in 2017, the Houzes became subject to the condominium's

governing documents as written at that time. As evidenced by the statute of limitations at issue, we discern no legislative intent to protect subsequent purchasers of a condominium unit in the Houzes' position. *See id.* Accordingly, the Stengels' adoption of the first amendment in March 2006 was not contrary to the "strong consumer protection" policy of the act. *See id.*

Moreover, the first amendment was not otherwise void *ab initio*. *See Bilanko v. Barclay Court Owners Association*, 375 P.3d 591, 595 (Wash. 2016) (analyzing an identical statute-of-limitations provision based on the Uniform Condominium Act and concluding that an amendment to a condominium declaration was not void *ab initio* because nothing suggested that the condominium owners association "committed fraud, seriously offended public policy, or exceeded its legal authority in passing the amendment"). Nothing in the record indicates that the Stengels committed fraud, seriously offended public policy, or exceeded their legal authority in adopting and recording the first amendment.

Because the first amendment is not void *ab initio*, any claims regarding its validity are subject to the statute of limitations contained in § 34-36.1-2.17(b). As discussed previously, the Houzes' counterclaims, brought more than ten years after the recording of the first amendment, are therefore time-barred. Accordingly, we will not address the merits of the Houzes' challenge to the validity of the first

amendment, nor will we address the Houzes' evidentiary argument relating to the testimony by their expert witness, Attorney Lombardi; the issue is moot.

We therefore affirm that portion of the Superior Court judgment denying defendants' counterclaims, albeit for reasons that differ from those articulated by the trial justice. *See Miller v. Metropolitan Property and Casualty Insurance Co.*, 111 A.3d 332, 339 (R.I. 2015) (stating that this Court may affirm a judgment on different grounds than those in the trial justice's decision).

## Civil Contempt

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). This Court affords "great deference to a trial justice's finding of contempt." *Town of Coventry v. Baird Properties, LLC*, 13 A.3d 614, 621 (R.I. 2011). We will not disturb the trial justice's findings of fact in a contempt proceeding unless the findings are clearly wrong or the trial justice abused his or her discretion. *E.g.*, *Harris v. Evans*, 250 A.3d 553, 560 (R.I. 2021). We give great deference to the trial justice's determinations of credibility, *id.*, because it was the trial justice who had the opportunity to observe the witnesses' live testimony and the witnesses' demeanor. *State v. Segrain*, 243 A.3d 1055, 1062 (R.I. 2021). Accordingly, if the record supports the trial justice's findings, we will not replace the trial justice's weighing of the evidence with our own. *See, e.g.*, *Now Courier,*

*LLC v. Better Carrier Corp.*, 965 A.2d 429, 434-35 (R.I. 2009); *Gardiner v. Gardiner*, 821 A.2d 229, 232 (R.I. 2003).

A party establishes civil contempt by producing clear and convincing evidence that the alleged contemnor did not substantially comply with a court order "sufficiently specific in its directive to the parties[.]" *Now Courier, LLC*, 965 A.2d at 434. Whether a party substantially complied with a court order depends on the circumstances of the case, such as the nature of the interest and the degree that noncompliance affected that interest. *E.g.*, *Durfee v. Ocean State Steel, Inc.*, 636 A.2d 698, 704 (R.I. 1994); *see Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991) (explaining that, to be held in contempt, the contemnor "must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion").

The defendants maintain that the trial justice erred when he found Mr. Houze in civil contempt because, according to defendants, there was insufficient evidence to support the finding of contempt and Mr. Houze had substantially complied with the TRO.

A review of the record of this case reveals that the trial justice's contempt finding is supported by clear and convincing evidence. The TRO prohibited the Houzes from "making unilateral decisions regarding the maintenance of the landscaping * * * without written approval from the Board of Directors and/or the

approval of 100% of the Unit Owners." Mr. Houze's actions leading up to the removal of the additional greenery demonstrate his intent to remove the holly bushes and crabapple tree without the Antons' consent, in direct defiance of the TRO.

As the trial justice found, Mr. Houze proposed the removal of the beech tree branch and the parties agreed to trim only that one specific branch. Yet, Mr. Houze took it upon himself to obtain an estimate from North-Eastern for additional work, including the removal of the crabapple tree and holly bushes, despite knowing that the Antons had not approved those modifications. Mr. Houze then chose to work with North-Eastern, which had no knowledge of the dispute between the parties, as opposed to Bartlett, which had required payment-in-advance because the company was fully aware of the disagreement between the Houzes and the Antons and wanted confirmation that both parties gave permission before any work on the condominium property commenced.

Additionally, the trial justice found that North-Eastern did not mistakenly cut the holly bushes and the crabapple tree; rather, he fully discredited Mr. Houze's testimony on the matter and inferred—based both on the fact that Mr. Houze had circumvented the approved servicer and on his failure to notify the Antons of the mistake—that he had intentionally caused the unauthorized removal of the additional greenery. The trial justice found that Mr. Houze's actions exemplified his belief that he had unilateral authority over the condominium. Giving proper deference to the

trial justice's factfinding, *Harris*, 250 A.3d at 560, we perceive no error with the trial justice's finding that Mr. Houze committed civil contempt by doing exactly what he was enjoined from doing: He unilaterally caused a modification to the landscaping, a common element of the condominium.

The defendants argue that Mr. Houze did not commit civil contempt because his only unilateral decision, in violation of the TRO, was choosing a landscaping company to which the Antons had not consented. They contend that because it was North-Eastern's mistake that caused the removal of the holly bushes and crabapple tree, Mr. Houze, through his own actions, had substantially complied with the TRO. However, this contention is meritless; we defer to the trial justice's credibility determination, *Harris*, 250 A.3d at 560, and here the trial justice did not find Mr. Houze's testimony to be credible. The trial justice instead found, as set out herein, that Mr. Houze intentionally caused the unauthorized greenery removal prohibited by the TRO—it was not merely a mistake—and, as we have determined, the trial justice's finding is amply supported by the record.

Thus, we conclude that the trial justice did not abuse his discretion in finding Mr. Houze in civil contempt of the TRO.

### Attorneys' Fees

On appeal, defendants do not challenge the statutory and contractual basis for the trial justice's award of attorneys' fees; rather, they assert that the trial justice

erred in awarding fees because (1) defendants raised a justiciable question in their counterclaim; (2) the trial justice erred in deciding in favor of plaintiffs on the merits of the case; and (3) plaintiffs should have availed themselves of arbitration, as required by the declaration.

"When attorneys' fees are appropriately awarded pursuant to statutory or contractual authority, we look to whether that award is both fair and reasonable based on the facts and circumstances of each particular case." *America Condominium Association, Inc. v. Mardo*, 270 A.3d 612, 620 (R.I. 2022). "[T]his Court will uphold a presiding judicial officer's award of attorneys' fees unless such award constitutes an abuse of discretion." *Mullowney v. Masopust*, 943 A.2d 1029, 1032 (R.I. 2008).

After review of the voluminous record transmitted to this Court on appeal and the comprehensive decisions issued by the trial justice, we cannot conclude that the trial justice abused his discretion in awarding fees in this case. Section 34-36.1-4.17 clearly authorizes the award of fees "in an appropriate case," and the declaration itself provides that unit owners who violate the terms of the declaration "shall be liable for all court costs and reasonable attorneys' fees incurred by * * * any Owner relating to such violation."

The trial justice observed the progress of the litigation and in his decision detailed myriad occasions where Mr. Houze acted unreasonably and was

"deliberately combative and confrontational[.]" This included when Mr. Houze constructed a "spite fence" in front of Unit 9A, misled the clerk of the city building inspector to obtain a permit for renovations to Unit 9, and defied the TRO by causing the removal of the holly bushes and crabapple tree without the Antons' approval. Based on his consideration of Mr. Houze's antagonistic behavior, the trial justice saw fit to award the Antons attorneys' fees; any arguments by the Houzes about the justiciability of the claims or merits of the decision are unavailing.

The Houzes' argument concerning the arbitration provision contained within the declaration is also unpersuasive. The Houzes waived their right to arbitration when they did not plead it in their answer, and when they failed to file a motion to compel arbitration pursuant to G.L. 1956 § 10-3-4. *See JHRW, LLC v. Seaport Studios, Inc.*, 212 A.3d 168, 176 (R.I. 2019) (concluding that the defendants' argument that they had a right to arbitrate was waived because it was not pled in the defendants' answer); *see also* Super. R. Civ. P. 8(c) (requiring a party to plead a right to arbitrate in its answer); Super. R. Civ. P. 12(h) (stating that, besides certain exceptions, a party waives all defenses the party did not plead in its answer); § 10-3-3 (permitting a party to petition the court to stay a lawsuit until an arbitration had been held in accordance with the terms of the arbitration agreement).

Moreover, Mr. Houze had knowledge of the attorneys' fee provision in the declaration by virtue of his admitted "line by line" reading of the governing

documents; yet, he chose to proceed with litigation by answering the complaint and asserting a counterclaim, rather than by pursuing arbitration. Having waived arbitration with the knowledge that they might be liable for attorneys' fees under the terms of both the declaration and the act, the Houzes may not now raise the arbitration provision in order to avoid otherwise properly awarded attorneys' fees.

Accordingly, we perceive no abuse of discretion with respect to the trial justice's award of attorneys' fees.

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court and remand the record in this case.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Charles A. Anton et al. v. Philippe L. Houze et al. |
| **Case Number** | No. 2020-234-Appeal.<br>No. 2020-247-Appeal.<br>(NC 17-493) |
| **Date Opinion Filed** | July 1, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>R. Daniel Prentiss, Esq.<br>For Defendants:<br><br>Thomas M. Dickinson, Esq. |